DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jennifer P., ("Mother") appeals from the decision of the Summit County Court of Common Pleas, Juvenile Division, finding her daughter, T.P.-M., to be a dependent child and placing her in the temporary custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} On June 7, 2007, while the newborn T.P.-M. was still in the hospital, CSB filed a complaint, alleging that the child, born on June 1, 2007, was dependent. The complaint referred to the fact that Mother and David M. ("Father") had previously had their parental rights to three children involuntarily terminated, following adjudications that those children were neglected and dependent. The decision granting permanent custody of those children was entered by the trial court on March 23, 2007 and was affirmed by this Court on October 10, 2007. SeeIn re J.P.-M., D.P.-M. and X.P.-M., 9th Dist. Nos. 23694 and 23714,2007-Ohio-5412. The three children *Page 2 
were removed from the home due to a lack of supervision and care by their parents as well as the extremely unsanitary condition of their home. The case plan in that case required the parents to maintain employment; obtain safe, stable housing; and participate in a parenting assessment, a drug assessment, couple's counseling, parenting classes, and anger management classes. Mother was also to engage in individual counseling.
 {¶ 3} The complaint noted that the parents were presently residing with T.P.-M's paternal grandmother, Marilyn Greathouse, and her boyfriend, Johnny Barnett, and recited concerns with that living arrangement. The complaint also set forth continuing concerns with the parents' personal relationship, mental health, substance abuse, and repeated denials to the agency by Mother of her pregnancy with T.P.-M. In seeking emergency temporary custody, the agency claimed that T.P.-M. would be at risk for problems similar to those of her siblings if she were left in her parents' care.
 {¶ 4} The trial court granted emergency temporary custody of T.P.-M to CSB at the shelter care hearing. Following the adjudicatory hearing, the magistrate found that T.P.-M. was dependent under R.C. 2151.04(D), and following the dispositional hearing, the magistrate granted temporary custody to CSB. Mother and Father filed timely objections to the magistrate's decisions. On April 9, 2008, the trial court overruled the objections and entered judgment, finding T.P.-M. to be a dependent child, pursuant to R.C. 2151.04(D), and placing her in the temporary custody of CSB.
 {¶ 5} Mother timely appeals and assigns five errors for review. II. ASSIGNMENT OF ERROR I. "THE TRIAL COURT ERRED IN FINDING THAT R.C. § 2151.04(D) IS NOT UNCONSTITUTIONAL AS APPLIED TO APPELLANT BECAUSE *Page 3 
R.C. § 2151.04(D) VIOLATES THE DUE PROCESS [GUARANTEES] OF THE FIFTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION."
 {¶ 6} In her first assignment of error, Mother contends that R.C. 2151.04(D) is unconstitutional, in that it violates the constitutional guarantees of due process, including considerations of substantive due process, as applied to this case. Mother asserted the unconstitutionality of R.C. 2151.04(D) at the adjudicatory hearing and subsequently entered specific objections to the magistrate's decision.
 {¶ 7} "[S]tatutes enjoy a strong presumption of constitutionality."State v. Cook (1998), 83 Ohio St.3d 404, 409. Before a court may declare a statutory enactment unconstitutional, "it must appear beyond a reasonable doubt that the statute and constitutional provision are clearly incompatible." State ex rel Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. Accordingly, we begin with a strong presumption that R.C. 2151.04(D) is constitutional.
 {¶ 8} R.C. 2151.04 was amended by the General Assembly in 1989 to include an additional definition of dependency. In re W.C. Jr., 9th Dist. No. 22356, 2005-Ohio-2968, at ¶ 18. In its current form, R.C. 2151.04(D) provides that a dependent child is any child to whom both of the following apply:
 "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by the parent, guardian, custodian, or member of the household."
 {¶ 9} Mother first argues that R.C. 2151.04(D) violates substantive due process because the provision is not narrowly tailored and is not the least restrictive alternative to accomplish the *Page 4 
State's fundamental interest of protecting children. It has been recognized that a parent's interest in the care, custody and management of his or her children is a constitutionally protected fundamental right. Santosky v. Cramer (1982), 455 U.S. 745, 753. Government may not infringe on this fundamental liberty interest, consistent with the constitution's substantive due process protection, "unless the infringement is narrowly tailored to serve a compelling state interest."Reno v. Flores (1993), 507 U.S. 292, 301-302. Ohio courts have similarly recognized the essential and basic right of a suitable parent to raise his or her child. In re Murray (1990), 52 Ohio St.3d 155, 157. While a deprivation of custody, even temporarily, infringes on a parent's fundamental interest in the custody of his or her child, the procedures used will not offend constitutional due process guarantees where they are narrowly tailored. In re M.D., 10th Dist. No. 07AP-954,2008-Ohio-4259, at ¶ 9-10.
 {¶ 10} Mother argues that R.C. 2151.04(D) is not narrowly tailored because it is redundant or duplicative of three other statutes: (1) R.C 2151.04(C), which applies the label of dependency to any child "[w]hose condition or environment" is such as to warrant state involvement; (2) R.C. 2151.031(D), which defines an abused child as one who "[b]ecause of the acts of his parents * * * suffers physical or mental injury that harms or threatens to harm the child's health or welfare;" and (3) R.C. 2151.03(A)(6), which describes a neglected child as one who "because of the omission of the child's parents * * * suffers physical or mental injury that harms or threatens to harm the child's health or welfare[.]"
 {¶ 11} Upon consideration, this Court concludes that R.C. 2151.04(D) is not redundant or duplicative of any of the three referenced statutes. This Court has previously indicated that R.C. 2151.04(D) permits the consideration of "a parent's prior history with a child welfare agency in regard to a determination that a subsequent child might be dependent." In re W.C. Jr., *Page 5 
9th Dist. No. 22356, 2005-Ohio-2968, at ¶ 18. R.C. 2151.04(D) allows the trial court to make a determination that a child is dependentbefore any actual harm is suffered by the child as a result of previous acts by the parents and contemporaneous conditions, whereas the other cited statutes only apply after the child has suffered actual harm. The argument is overruled.
 {¶ 12} Mother next argues that R.C. 2151.04(D) is not narrowly tailored because it is not internally consistent. The argument is not entirely clear, but it appears that Mother is claiming that since R.C. 2151.04(A) does not require the existence of fault on the part of a parent, that there can be no affirmative act by a parent, pursuant to R.C. 2151.04(D), that might lead to a child being adjudicated abused, neglected or dependent. We conclude that this argument was not raised below and may not be raised for the first time on appeal.
 {¶ 13} Third, Mother argues that R.C. 2151.04(D) is unconstitutional because it carries with it an "implicit assumption" that, once a parent has had a child adjudicated to be abused, neglected or dependent, future circumstances will always justify a finding of a danger of abuse or neglect again. Mother asserts that this constitutes an improper presumption.
 {¶ 14} Clearly, an irrebutable presumption of dependency based solely on a past adjudication would be unconstitutional. See Stanley v.Illinois, (1972), 405 U.S. 645, 656. The statute at issue here, though, does not presume that where a parent has had one child adjudicated abused, neglected or dependent, another of the parent's children will inevitably be found to be in danger of abuse or neglect. Instead, the statute requires the existence of a causal relationship between past circumstances and present conditions, on the one hand, and resultant danger to the child, on the other. This connection serves to provide an appropriate nexus and protects the integrity of the procedure. *Page 6 
 {¶ 15} R.C. 2151.04(D) requires, first, that the child at issue must reside in the same household in which a sibling of that child was adjudicated abused, neglected, or dependent. Second, the provision requires that a member of the child's present household committed an act that was the basis of the prior adjudication. Third, the trial court must find that the child is presently in danger of being abused or neglected by a member of that child's household due to the circumstances surrounding the prior abuse, neglect, or dependency as well as the current conditions in the household. Accordingly, the argument is without merit.
 {¶ 16} Finally, Mother claims that the statute is unconstitutional as applied to her because T.P.-M. was never in her care and CSB did not clearly and convincingly establish an imminent risk of abuse or neglect to the child. As more fully addressed in the discussion of Mother's third assignment of error below, we conclude that the evidence did establish that T.P.-M. was in danger of abuse or neglect.
 {¶ 17} Ohio courts have specifically addressed the question of prospectively protecting children when there is clear and convincing evidence of a real risk of harm to them. Newborn infants can be found dependent before they have ever been released into their parents' custody. See, e.g., In re Bishop (1987), 36 Ohio App.2d 123, 124. The Twelfth District has indicated: "The state need not subject a child to a potentially detrimental environment where a court has made a prospective finding of dependency pursuant to R.C. 2151.04." In re PieperChildren (1993), 85 Ohio App.3d 318, 325. "A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child." In re Campbell (1983), 13 Ohio App.3d 34, 36. We agree with these principles and conclude that this statute provides an appropriate avenue for the State to protect children from *Page 7 
situations that present an imminent threat of danger to their well-being. Mother's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II. "THE TRIAL COURT ERRED IN FINDING THAT REVISED CODE SECTION 2151.41(D) DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSES OF THE U.S. AND OHIO CONSTITUTIONS."
 {¶ 18} In her second assignment of error, Mother argues that R.C. 2151.04(D) violates the equal protection guarantees of the Ohio and United States Constitutions. She claims that the provision creates an arbitrary classification between those parents to whom R.C. 2151.04(D) applies and those to whom it does not. Mother, therefore, asserts that the statute improperly differentiates between parents who have had a history with the juvenile court system and those who have not.
 {¶ 19} Equal protection claims arise when a state treats similarly situated people differently on an arbitrary basis. Conley v.Shearer (1992), 64 Ohio St.3d 284, 288-289. Stated differently, a law that treats all people under like circumstances identically will not give rise to an equal protection violation. Id. at 289. Mother has not identified any similarly situated individuals who have been treated differently from her. The statute treats all people within its ambit equally. The statute does not discriminate because there is no unequal treatment of similarly situated persons.
 {¶ 20} The classification imposed by R.C. 2151.04(D) is not unreasonable or arbitrary. When parents have previously had a child adjudicated abused, neglected, or dependent, and when those prior circumstances have a nexus to present conditions, it is not unreasonable or arbitrary for the trial court to consider the parents' present situation in light of their past circumstances. *Page 8 
 {¶ 21} As to Mother's claim that the statute places too much focus on the history of the child's siblings, it should be emphasized that the statute does not rely solely on the prior adjudication. Rather, the trial court is directed to also consider the current conditions in the household. R.C. 2151.04(D)(2). It is only when the trial court concludes that a child is presently "in danger of being abused or neglected" that the court may adjudicate the child to be dependent pursuant to R.C. 2151.04(D). R.C. 2151.04(D)(2). A trial court should not be required to ignore a parent's history with other children where that history may reveal a risk to the well-being of a child. In light of the juvenile court's obligation to protect the safety and well-being of the children that come before it, that court, in fact, has a clear duty to consider present conditions in light of related history. R.C. 2151.04(D) provides an appropriate framework for such consideration.
 {¶ 22} Mother's argument that the statute is overbroad is also without merit. Initially, it appears to this Court that the application of the statute is self-limiting by the requirement that the trial court must find the child to be currently in danger of being abused or neglected as a result of past circumstances and present conditions. In addition, a "statute will be invalidated as overbroad only when its overbreadth has been shown * * * to be substantial." State v. Tooley,114 Ohio St.3d 366, 376, 2007-Ohio-3698, at ¶ 30, citing New York v. Ferber (1982),458 U.S. 747, 769. Mother has not made such a demonstration. Mother's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III. "THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 9 
 ASSIGNMENT OF ERROR IV. "THE TRIAL [COURT] ERRED IN ITS INTERPRETATION OF R.C. § 2151.04(D) AND IN ITS APPLICATION OF THE STATUTE TO APPELLANT."
 {¶ 23} In her third and fourth assignments of error, Mother argues that the judgment of the trial court is unsupported by the evidence and also that the trial court erred in its application of R.C. 2151.04(D).
 {¶ 24} Mother first contends that there is no evidence of "acts" by the parents, which formed the basis of the adjudications of siblings of T.P.-M, as required by R.C. 2151.04(D). Consequently, she maintains, the trial court judgment is not supported by clear and convincing evidence and is against the weight of the evidence. The basis of Mother's argument is that the parents' behavior was in the nature of omissions or conditions as opposed to affirmative actions and that the parents' behavior, therefore, provides no evidence in support of R.C. 2151.04(D)(1). We find this assertion to be spurious. We hold that the failure of the parents to properly supervise the siblings of T.P.-M. and the failure of the parents to maintain a safe and sanitary home for those children do indeed constitute "acts" within the meaning of R.C. 2151.04(D)(1). Accordingly, there is no lack of evidence on this point.
 {¶ 25} Mother next argues that, assuming this Court finds the above evidence constitutes acts which formed the basis for the adjudication of the siblings of T.P.-M. as dependent and neglected, CSB failed to prove that there is a present danger of abuse or neglect to T.P.-M. as a result of the circumstances surrounding those acts and the other conditions in the household of the child.
 {¶ 26} A review of the circumstances surrounding those acts and the other conditions in the household of the child is, therefore, appropriate. The circumstances surrounding the prior *Page 10 
adjudication, as presented to the trial court, are as follows. The parents' residence was in a chronically deplorable condition, unsafe and unsanitary for the children. At the time of their removal, the two-year-old and three-year-old were found outside in the middle of the street, unclothed, and unsupervised, while Mother and several unrelated adults were asleep in the home. Mother had been sleeping a lot and Father had an anger management problem. The agency believed the parents offered no structure and no boundaries for the children. The agency and trial court attempted to address the potential reasons for the parents' behavior and their situation through case planning services directed towards mental health, anger management, substance abuse, and parenting skills.
 {¶ 27} Subsequently, at the time of the birth of T.P.-M., caseworker Bernadette Jablonski and caseworker Jacquelyn Feaster asked to visit the current residence of the parents. The parents were staying at the home of Father's mother, Mrs. Greathouse, and her boyfriend, Johnny Barnett, at that time. Upon arriving, Ms. Jablonski asked Mother and Father to sign releases, so that the agency could assess the parents' progress on their case plan goals from the prior case, but the parents declined. At that point, Father became somewhat defensive and angry. Ms. Jablonski testified that she could not assess parental progress on case plan goals in the prior case without their releases.
 {¶ 28} Ms. Greathouse and Mr. Barnett were present at the time of the visit and they were asked to sign releases for background checks. Ms. Greathouse agreed, but Mr. Barnett refused. A public records check revealed that Mr. Barnett had a three-year-old criminal conviction. These residents were said to be uncooperative in confirming who else lived in the home. *Page 11 
 {¶ 29} Both caseworkers testified that they smelled the odor of marijuana immediately upon entering the home. Based on that observation and the additional fact that both parents had a history of marijuana use, Ms. Jablonski asked all the adults in the home to agree to a drug screen. Mr. Barnett said absolutely not and Father became very upset and yelled and screamed at that point.
 {¶ 30} The caseworkers were only permitted to see two rooms in the home, the living room and the parents' bedroom. Those rooms were clean and not comparable to the deplorable conditions at the parents' prior residence. The residents confirmed that Mother's father occasionally stayed in the basement, but the caseworkers were refused access to that area of the home. Ms. Jablonski testified that the parents had been residing in this home for six or seven months, but no home visits were scheduled there during the prior case because the parents had not made substantial progress on their case plans and also because Father did not believe his mother was an appropriate supervisor.
 {¶ 31} Circumstances continuing from the prior case to the present one include concerns regarding housing, anger issues, and substance abuse. The trial court found that despite the parents completing much of the prior case plan objectives, T.P.-M was in danger of being abused or neglected due to the condition of the parents' home, Father's inability to manage his anger, and the fact that drugs were being used in the home. As noted by the trial court, the real issue is not completion of case plan objectives, but whether T.P.-M. is in danger of being abused or neglected. The trial court concluded that there was clear and convincing evidence that T.P.-M. was in danger of being abused or neglected by her parents due to the circumstances surrounding the abuse, neglect or dependency of her siblings and the other conditions in her household. This Court concludes that the trial court did not err in so finding. *Page 12 
 {¶ 32} Mother's third and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR V. "THE TRIAL COURT ERRED IN AWARDING CSB TEMPORARY CUSTODY OF THE MINOR CHILD."
 {¶ 33} In her fifth assignment of error, Mother argues that the trial court erred in awarding CSB temporary custody of T.P.-M. and contends that the child should have been placed in her custody under protective supervision instead.
 {¶ 34} R.C. 2151.353(A) provides that when a child is adjudicated dependent, the trial court may commit the child, inter alia, to protective supervision, temporary custody, or legal custody of a parent or another person. R.C. 2151.01 provides that Chapter 2151 should be liberally interpreted so as to "provide for the care, protection, and mental and physical development of children subject to [Chapter 2151], whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety[.]" A juvenile court must consider the best interests of the child when it considers the dispositional alternatives enumerated in R.C. 2151.353(A). In re Cunningham (1979), 59 Ohio St.2d 100, 107.
 {¶ 35} At the time of the dispositional hearing regarding T.P.-M., the parents had left the paternal grandmother's home and had been living in their own residence for approximately one month. CSB worker, Eileen Kostich, testified that the parents had been consistent in attending visitation and had bonded well with the child. Testimony was presented regarding the parents' efforts to complete remaining case plan objectives from the prior case. Because of the delay in obtaining releases, there was some evidence of technical compliance with attendance at service programs, but there was a lack of evidence regarding the parents' incorporation of skills they *Page 13 
should have learned in their individual counseling, couple's counseling, anger management, and parenting classes.
 {¶ 36} CSB service providers and the guardian ad litem focused their concerns on the issue of housing. Two service providers visited the home. Pat McLaughlin, the guardian ad litem, conducted an unannounced visit approximately ten days prior to the dispositional hearing. She described the living room as being cluttered, the kitchen as a "disaster," and the bathroom as "totally messy." The kitchen had food wrappers, pizza boxes, and all kinds of things stacked on counters and the floor. She described the bathroom as very messy, with clothes and wet towels on the floor. She said so much was piled on the floor that she could not see beneath to know whether the surface was clean or not. The crib was covered with clothes and other items. She described the home as "unsanitary," and stated she would be concerned about an infant being placed in that situation.
 {¶ 37} Eileen Kostich made an announced visit on the evening of the first day of the dispositional hearing. She found a much cleaner home. In general, there were no major concerns, though the family still needed some furniture and food. Pictures were taken and introduced into evidence at the hearing. The guardian ad litem admitted that the home was cleaned up considerably from her visit.
 {¶ 38} The CSB caseworker and the guardian ad litem both recommended that T.P.-M. should be placed in the temporary custody of CSB. Both witnesses were concerned with the parents' ability to maintain housing for a period of time and believed that before the child could be returned, the parents should demonstrate an ability to maintain clean, safe, and appropriate housing. CSB service provider Eileen Kostich explained that housing has been a long-standing *Page 14 
concern with these parents and emphasized that they had never been able to maintain clean, safe housing on their own.
 {¶ 39} Based on the parent's chronic inability to maintain safe housing, the extremely deplorable condition of the last residence they maintained together, the recent problem with their current residence, and the very brief period for which they properly maintained their current residence, we conclude that the trial court did not abuse its discretion in determining that it was in the best interest of T.P.-M. that she be placed in the temporary custody of CSB. Mother's fifth assignment of error is overruled.
 III. {¶ 40} Mother's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 15 
Costs taxed to Appellant.
 SLABY, J. DICKINSON, J. CONCUR *Page 1