[Cite as *In re V.S.*, 2017-Ohio-9136.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: V.S.

C.A. Nos.    28602
                28609

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 16-09-0827

DECISION AND JOURNAL ENTRY

Dated: December 20, 2017

CALLAHAN, Judge.

{¶1} Appellants Mother and Father appeal the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated their child V.S. a dependent child. This Court affirms.

I.

{¶2} Mother and Father are the biological parents of V.S. (d.o.b. 6/16/16). Mother is also the biological mother of A.P. and C.S. Father is the biological father of C.S. After being adjudicated neglected and abused, A.P. and C.S. were ultimately placed in the permanent custody of Cuyahoga County Department of Children and Family Services ("CCDCFS"). On September 15, 2016, the Eighth District Court of Appeals affirmed the termination of Mother's and Father's parental rights and the award of permanent custody of A.P. and C.S. to CCDCFS.

{¶3} On September 23, 2016, Summit County Children Services Board ("CSB") filed a complaint alleging that V.S. was a dependent child. The agency alleged three bases for

dependency: (1) that the child was homeless, destitute, or without adequate parental care, through no fault of the child's parents; (2) that the child's condition or environment warranted the state's assumption of the child's guardianship in the interest of the child; and (3) that (a) the child was residing in a household where a parent committed an act resulting in the adjudication of another child in the household as an abused, neglected, or dependent child; and (b) because of the circumstances surrounding the abuse, neglect, or dependency of the other child, as well as other conditions in the child's household, the child was in danger of being abused or neglected by the parent. R.C. 2151.04(A), (C), and (D)(1) and (2). V.S. was ordered into the emergency temporary custody of CSB the same day.

{¶4} On the first date scheduled for adjudication, Mother requested a continuance. Father did not oppose Mother's request, and the magistrate rescheduled the hearing to occur approximately five weeks later. Despite having been properly served, both Mother and Father failed to appear for adjudication, allegedly based on a medical emergency. The magistrate refused to further continue the matter based on statutory time constraints. She agreed to schedule a second date for the adjudication, however, to allow Mother and Father to be present for the caseworker's testimony and to present their own cases in chief. Both parents appeared for the second day of hearing. Neither testified or presented any evidence.

{¶5} At the conclusion of the adjudicatory hearing, the magistrate found V.S. dependent pursuant to R.C. 2151.04(D)(1) and (2), based on the prior abuse and neglect adjudications of the child's siblings and the danger that V.S. might thereby be abused or neglected in the household. The magistrate found that CSB did not prove by clear and convincing evidence that V.S. was a dependent child pursuant to R.C. 2151.04(A) or (C). She, therefore, dismissed those allegations in the complaint. The matter proceeded to disposition, and

the magistrate placed the child in the temporary custody of CSB. The juvenile court adopted both of the magistrate's decisions the same days they were issued.

{¶6} Mother and Father each filed objections to the magistrate's decision, alleging that the dependency adjudication was not supported by the evidence. Father requested leave to supplement his objections. After the transcript was filed, Father supplemented his objections, and CSB filed a brief in opposition. According to the juvenile court's judgment entry, the parties all appeared for oral argument on the objections, and the court granted leave to Mother and Father to further supplement their objections. There is no transcript of the objections hearing in the record. Although Father had earlier supplemented his objections, Mother failed to do so. The juvenile court thereafter issued its judgment in which it overruled Mother's and Father's objections and adjudicated V.S. a dependent child pursuant to R.C. 2151.04(D), and adhered to its prior order placing the child in the temporary custody of CSB. Five days later, Mother filed a motion to respond to CSB's brief in opposition. The juvenile court properly did not rule on Mother's motion, as it was a nullity, akin to a motion for reconsideration after the juvenile court issued its final judgment. *See In re J.P.*, 9th Dist. Summit No. 24538, 2009-Ohio-3974, ¶ 7 (recognizing no authority for a motion for reconsideration of a final judgment pursuant to the Ohio Rules of Juvenile Procedure).

{¶7} After the juvenile court ruled on the parents' objections, Mother and Father both filed timely notices of appeal. Each raises one assignment of error for consideration. Although Mother and Father have filed separate briefs, their assignments of error are identical. Accordingly, this Court consolidates the assignments of error for review.

II.

**MOTHER'S AND FATHER'S ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR WHEN IT FOUND V.S. TO BE A DEPENDENT CHILD PURSUANT TO R.C. 2151.04(D), AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶8}** Mother and Father argue that the juvenile court's finding that V.S. is a dependent child pursuant to R.C. 2151.04(D) was against the manifest weight of the evidence. This Court disagrees.

**{¶9}** Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶10}** CSB's complaint alleged, inter alia, prior concerns arising out of Mother's and Father's case with CCDCFS and alleged that neither parent worked on their case plan objectives and, in fact, stopped participating in any services or court proceedings.

> In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, "this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of

witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]"

*In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8 (9th Dist.).

{¶11} Mother and Father challenge the finding that V.S. was dependent pursuant to R.C. 2151.04, which defines "'dependent child'" as any child:

(D) To whom both of the following apply:

(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

{¶12} With regard to a finding of dependency under this subsection, this Court has recognized the following:

It is clear that, with the addition of R.C. 2151.04(D), the legislature considered a parent's prior history with a child welfare agency significant in regard to a determination that a subsequent child might be dependent. Further, while R.C. 2151.04(D)(2) requires that the trial court base its finding of dependency, in part, on "other conditions in the household of the child," the legislature did not limit which conditions may be considered.

*In re W.C.*, 9th Dist. Summit No. 22356, 2005-Ohio-2968, ¶ 18. Moreover, "R.C. 2151.04(D) allows the trial court to make a determination that a child is dependent *before* any actual harm is suffered by the child as a result of previous acts by the parents and contemporaneous conditions * * *[.]" (Emphasis in original.) *In re T.P.-M.*, 9th Dist. Summit No. 24199, 2008-Ohio-6437, ¶ 11. In other words, the law does not require the juvenile court to "'experiment with the health

and safety of a newborn baby where the state can show by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child.'" *Id.* at ¶ 17, quoting *In re Campbell*, 13 Ohio App.3d 34, 36 (12th Dist.1983).

{¶13} In this case, the evidence establishes, and Mother and Father do not dispute, that their parental rights were recently terminated as to two other children in their household who had been adjudicated abused and neglected. Mother and Father both argue, however, that CSB failed to prove by clear and convincing evidence that either of them committed an act that formed the basis for those adjudications. Specifically, the parents argue that the two other children were living with an aunt and uncle when concerns for abuse and neglect arose.

{¶14} The caseworker for CCDCFS testified, however, that Mother, Father, and the two children (A.P. and C.S.) were all staying with the aunt and uncle, although Mother and Father would on occasion stay in hotels and leave the children with their relatives. She added that the State-wide Automated Child Welfare Information System ("SACWIS") indicated multiple substantiated referrals for neglect regarding both Mother and Father.

{¶15} The CSB intake caseworker was more precise. She testified that a substantiated report of neglect against Mother in 2013, an indicated report of sexual abuse by Father against A.P. in 2014, physical abuse arising out of domestic violence between Mother and Father, and circumstances of general neglect led to the removal of A.P. and C.S. and their adjudications. Accordingly, the juvenile court's finding that Mother and/or Father committed an act that formed the basis for the abuse and neglect adjudications of A.P. and C.S. was not against the manifest weight of the evidence.

{¶16} The specific concerns that gave rise to the prior adjudications of A.P. and C.S. included a lack of appropriate housing, domestic violence between Mother and Father, and

substance abuse and mental health issues involving both parents. The parents' issues prevented them from providing adequate care to the children. The CCDCFS caseworker testified that neither Mother nor Father actively participated in their case plan objectives to address those issues. In fact, the agency had a difficult time locating Mother and Father during the pendency of the case, because they moved around, often to different counties. The caseworker testified that the prior case went on for at least two years. Mother was approximately three months pregnant with V.S. when her parental rights to A.P. and C.S. were terminated, but she hid that information from CCDCFS.

{¶17} The concerns that gave rise to CSB's involvement with V.S. included housing issues, substance abuse, domestic violence, and concerns that the parents were neglecting the child's basic needs. Specifically, there were reports that the family was asking neighbors for food and household items. Father was heard verbally abusing Mother and telling her to kill herself. Various caseworkers from CSB went to the parents' home on multiple occasions to investigate. Despite seeing a television on through the window, and hearing a voice inside say, "Let the dogs out[,]" no one would answer the door. One of the caseworkers left a card with a phone number for the parents to call, but neither did.

{¶18} The Stow police department received a call from the parents' former neighbor who reported that Mother and Father were neglecting V.S., because they were using heroin and did not have food and diapers for the baby. As Officer Reiheld was documenting the complaint, he received a call from a caseworker at CSB who had received a similar referral regarding the family. The caseworker had gone to Mother's and Father's residence twice, but no one answered the door. The caseworker asked the officer to assist in a welfare check of the child. When Officer Reiheld and a partner went to Mother's and Father's residence, there was an eviction

notice on the door. Although the officer heard female voices inside the home, their conversation stopped when he knocked. No one answered the door. Eventually the officers left. They received an anonymous tip from a neighbor who had been watching. The neighbor reported that Mother and Father had just left the home with another person in a silver Toyota. Officer Reiheld did a background check on Mother and Father and discovered that there was an outstanding warrant for Mother's arrest. Spotting the silver Toyota, the police stopped the vehicle. Mother and Father, along with V.S., were passengers. The police arrested Mother and told the driver of the car to take Father and the baby to the police station to sort out the situation.

{¶19} Upon questioning, Father lied about his and Mother's having lost custody of other children. In addition, although Father said that he and Mother had planned to go to a hotel for the night, he could not articulate any plans for where the family would live after that. As for Mother, the officer testified that he witnessed some "bizarre" behavior. Based on the allegations of heroin use, the inability of the parents to articulate where they would be living after eviction, Mother's arrest warrant, and the young age of the baby, Officer Reiheld took custody of V.S. pursuant to Juv.R. 6.

{¶20} Both parents attended a family team decision meeting at CSB the next day. They admitted that they were being evicted and had not secured a new residence. Father claimed to be receiving $2,000 per month from the Veterans' Administration, so it was unclear why the family was not able to pay their rent. The only explanation Father offered was that he had loaned money to someone who had not repaid it, and the family fell behind on rent. Mother and Father both also admitted to having mental health diagnoses. Father signed a release to substantiate that he was diagnosed with post-traumatic stress disorder and was receiving services and medication from the Veterans' Administration. Mother reported that she was taking medication for

depression, but she refused to sign a release for the agency to verify her claims with her mental health provider that she was receiving treatment. In addition, although both Mother and Father initially agreed to submit to drug screens, both subsequently declined, claiming that they would have problems urinating.

{¶21} Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in adjudicating V.S. as a dependent child. The concerns that existed when A.P. and C.S. were adjudicated abused and neglected, and when Mother's and Father's parental rights were terminated as to those children, persisted when V.S. was removed from her parents shortly thereafter. Mother and Father did not comply with their case plan objectives or demonstrate that they had remedied the issues necessitating the removals of A.P. and C.S. during the two-year pendency of that case. Mother became pregnant during the Cuyahoga County case, neither reporting the pregnancy nor recognizing it as an incentive to remedy her issues. Instead, Mother and Father hid the pregnancy. In addition, they moved from location to location without informing caseworkers. In the instant case, Mother and Father avoided contact with caseworkers and police who attempted to investigate to determine the well-being of V.S. Mother and Father were deceptive and evasive in their dealings with the agencies charged with investigating the well-being of the child. The parents continued to engage in abusive behaviors with one another. Despite an alleged monthly income of $2,000, their eviction from their home was imminent, and they were unable to afford necessities of food and diapers for the baby. Under these circumstances, the juvenile court's finding that three-month old V.S. was in danger of being abused or neglected by her parents because of the circumstances surrounding the abuse and neglect of A.P. and C.S., as well as other conditions in the child's household, was not against the manifest weight of the evidence.

Accordingly, the juvenile court did not err by adjudicating V.S. a dependent child pursuant to R.C. 2151.04(D).

**{¶22}** Mother's and Father's identical assignments of error are overruled.

### III.

**{¶23}** Mother's and Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CARR, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

DANIEL R. BACHE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

SARAH HULBURT, Guardian ad Litem.