[Cite as *In re D.W.*, 2025-Ohio-246.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: D.W.

C.A. No.    31058

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 23 08 0696

DECISION AND JOURNAL ENTRY

Dated: January 29, 2025

HENSAL, Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her child dependent and placed the child in the temporary custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}    Mother is the biological mother of D.W., the subject child of this appeal. She is also the mother of two older children who are not at issue in this appeal, but whose circumstances are relevant to D.W.'s case. Mother is unmarried and living with her long-term boyfriend, who is not D.W.'s biological father. The child's biological father was not involved in the proceedings below and has not appealed.

{¶3}    In 2018, CSB filed complaints alleging that Mother's older children, C.M. and C.W., were dependent based on the parents' drug use and associated issues, including a lack of supervision of the children and the parents' involvement in criminal activity. Mother was

convicted of aggravated possession of drugs in 2017, was placed on community control, and subsequently violated those terms. Mother waived her rights to an adjudicatory hearing regarding C.M. and C.W., stipulating that the allegations in the complaint were true and that both children were dependent.

{¶4} In 2020, the juvenile court granted legal custody of C.M. and C.W. to relatives/kin after a final dispositional hearing. The trial court found that Mother had not participated in substance abuse treatment for more than a year, had engaged in ongoing criminal acts leading to her incarceration, and had not visited with the children for some time. Mother did not object to or appeal those awards of legal custody.

{¶5} Mother gave birth to D.W. on February 10, 2023. She tested positive for methamphetamine at the time of the child's birth. Mother also admitted to the hospital social worker that she had not had any prenatal care and had no supplies for the infant at home. CSB began working with Mother on an informal basis to establish a safety plan to mitigate the risks to the child based on both historical and current concerns. Mother engaged in substance abuse treatment and worked to secure the necessary items for the baby. After Mother tested negative for drug use for three months, CSB transferred the family's case to its Family Preservation Unit to continue working with Mother on an informal basis, wherein the caseworker would have monthly contact with the family to assess for ongoing risks to the child and determine how to address them. Mother told the caseworker she understood that the caseworker would maintain monthly contact with her, and she agreed with that arrangement.

{¶6} At the end of the first month, the caseworker was unable to make contact with Mother at the agreed upon time. The caseworker then made nine home visits to Mother's home over the following three-month period, leaving her business card and letters asking Mother to

contact her. Mother did not respond. When the caseworker made a tenth attempt to contact Mother at home, Mother's boyfriend told her that Mother was not there but that he would call her. The caseworker was able to speak with Mother who said she was not available to meet that day. The following day, Mother called the caseworker and said she was home. The caseworker immediately left for Mother's home.

{¶7} Mother granted access to the caseworker to inspect her home. It was safe and appropriate and had all necessary supplies for the child. D.W. appeared to be healthy and was up to date on medical appointments. Mother agreed to provide a drug swab upon the caseworker's request. Mother tested positive for methamphetamine, amphetamines, and THC. She also informed the caseworker that she was no longer engaged in drug treatment services because she felt overwhelmed and did not like her counselor.

{¶8} CSB filed a complaint alleging that D.W. was an abused, neglected, and dependent child. The complaint referenced Mother's substance abuse, criminal, and child welfare histories, as well as her current drug use and pending criminal charges, including a felony drug offense. The agency obtained an emergency order of temporary custody of the child.

{¶9} After a contested adjudicatory hearing, the magistrate found D.W. to be a dependent child pursuant to Revised Code Section 2151.04(D)(1)(2), but dismissed the remaining allegations of abuse, neglect, and dependency. Mother filed an objection to the magistrate's decision, arguing that the evidence did not clearly and convincingly support the dependency finding. CSB filed a brief in opposition. The juvenile court overruled Mother's objection and adjudicated D.W. dependent pursuant to Section 2151.04(D)(1)(2). Mother later waived her right to a dispositional hearing and stipulated to the child's placement in CSB's temporary custody.

{¶10} Mother filed a timely appeal. She raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADJUDICATED THE CHILD IN THE WITHIN MATTER TO BE DEPENDENT PURSUANT TO [SECTION] 2151.04(D). THE TRIAL COURT'S FINDING THAT THE CHILD WAS DEPENDENT WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Mother argues that the juvenile court's adjudication of D.W. as a dependent child pursuant to Section 2151.04(D)(1)(2) is against the manifest weight of the evidence. This Court disagrees.

{¶12} A child welfare agency initiates a juvenile dependency, neglect, and/or abuse case by filing a complaint in the juvenile court. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(H). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If the agency fails to prove the allegations in the complaint by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F)(1); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} This Court reviews a manifest weight challenge to an adjudicatory finding as follows:

> In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses

and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Alterations sic.) *In re R.L.*, 2017-Ohio-4271, ¶ 8 (9th Dist.), quoting *In re C.S.*, 2012-Ohio-2884, ¶ 5 (9th Dist.), quoting *In re A.W.*, 2011-Ohio-4490, ¶ 8 (9th Dist.).

**{¶14}** Mother challenges the juvenile court's finding that D.W. is dependent under Section 2151.04(D) which defines "dependent child" as one "[t]o whom both of the following apply:"

> (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

> (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

**{¶15}** Abuse includes, but is not limited to, child endangering and acts by a parent that harms or threatens to harm a child's health or welfare. R.C. 2151.031(C), (E). Neglect embodies circumstances such as a lack of adequate parental care due to a parent's faults or habits, failure to provide various types of necessary or special care for the child's wellbeing, and omissions by a parent that harm or threaten to harm the child's health or welfare. R.C. 2151.03(A)(2), (3), (4), (6).

**{¶16}** When considering whether a child is dependent under this subsection, this Court has recognized:

> "It is clear that, with the addition of [Section] 2151.04(D), the legislature considered a parent's prior history with a child welfare agency significant in regard to a determination that a subsequent child might be dependent. Further, while [Section] 2151.04(D)(2) requires that the trial court base its finding of dependency, in part, on 'other conditions in the household of the child,' the legislature did not limit which conditions may be considered." *In re W.C.*, 2005-Ohio-2968, ¶ 18 (9th Dist.). Moreover, '[Section] 2151.04(D) allows the trial court to make a

determination that a child is dependent *before* any actual harm is suffered by the child as a result of previous acts by the parents and contemporaneous conditions. . .[.]' (Emphasis in original.) *In re T.P.-M.*, 2008-Ohio-6437, ¶ 11 (9th Dist.). In other words, the law does not require the juvenile court to "experiment with the health and safety of a newborn baby where the state can show by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of the child." *Id.* at ¶ 17, quoting *In re Campbell*, 13 Ohio App.3d 34, 36 (12th Dist. 1983).

*In re V.S.*, 2017-Ohio-9136, ¶ 12 (9th Dist.).

**{¶17}** Mother concedes that CSB proved Subsection (D)(1), and the evidence supports that prong of the dependency test. She argues that the agency failed to meet its burden of proof regarding Subsection (D)(2), however, because it demonstrated no nexus between the circumstances surrounding the older siblings' dependency adjudications and the current conditions in Mother's home which places the child in danger of being abused or neglected.

**{¶18}** The specific concerns underlying the adjudications of C.M. and C.W. included Mother's substance abuse issues, the lack of supervision of the children, and Mother's engagement in criminal activity which led to her inability to provide care for the children during times of her incarceration. Mother stipulated to the facts underlying the older siblings' adjudications.

**{¶19}** Mother admitted at D.W.'s adjudicatory hearing that she had relapsed into drug use while pregnant with that child. She tested positive for methamphetamine at the time of D.W.'s birth. She also admitted that she had not obtained prenatal care and had no supplies for the baby at home. In addition, Mother was facing recent charges for felony drug possession and misdemeanor theft. The caseworker testified that Mother's boyfriend also has a history of criminal charges for drug possession, indicating possible drug use by another household member. As Mother's circumstances were nearly identical to her circumstances underlying her older children's adjudications, CSB offered Mother the opportunity to engage in voluntary services designed to mitigate the risks to D.W. and prevent the need for formal agency and juvenile court intervention.

{¶20} Mother was able to attain sobriety for a short time while she engaged in drug treatment services. Within three months, however, she had ceased participating in services and relapsed into drug use. Her drug test in August 2023, when the caseworker was able to make contact after three months, indicated a high level of methamphetamine. While Mother admitted having used a friend's homemade THC vape pen, she denied having used methamphetamine and amphetamines. She speculated that the vape pen contained those drugs without her knowledge. Nevertheless, the fact remains that Mother's choice created a situation where she was exposed to contact with and use of illegal substances.

{¶21} During the three months when she had no contact with the caseworker, Mother explained that she had been staying with a dying friend in another county. She told the caseworker that she had D.W. with her during that time. Mother testified that she only rarely returned to her home while helping to care for her dying friend. She explained therefore that she may not have seen any of the caseworker's cards or letters because she was in a hurry to return to her ill friend. Nevertheless, she kept D.W. with her instead of leaving the infant with her mother or grandparents whom CSB had approved to supervise Mother's interaction with the child under the safety plan. It was during that time that Mother used, at best unknowingly, methamphetamine.

{¶22} The caseworker testified that Mother's relapse into methamphetamine use and her cessation of drug treatment services were the core bases underlying the agency's complaint. She explained that her professional training included identifying potential risks and that Mother's substance abuse poses a risk to the safety and wellbeing of the child. Specifically, the caseworker testified that there is a concern for a lack of supervision of a child if a parent is "actively using or actively high." She added that intoxication potentially leaves a parent unable to react appropriately when a child is crying, hungry, needs a diaper change, or is otherwise in distress. The caseworker

testified that she discussed with Mother the importance of using appropriate caregivers for D.W. if Mother planned to actively use drugs to keep the infant safe during those times. Nevertheless, Mother kept the child with her when she used her friend's vape pen that contained both marijuana and methamphetamine.

{¶23} Based on a thorough review of the record, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in adjudicating D.W. a dependent child. The concerns that existed when C.M. and C.W. were adjudicated dependent mirrored those when the agency removed D.W. from Mother's home. Mother was unable to reunify with C.M. and C.W. based on her lack of case plan compliance. At the time of D.W.'s removal, Mother was again using a variety of drugs, not participating in drug treatment, and was facing drug-related criminal charges. Her live-in paramour was also involved with drugs. Mother's prior criminal convictions resulted in periods of incarceration and in-patient services, leaving her unable to care for her children during that time. She was again facing the possibility of incarceration or other absence from home. Mother did not formulate or implement any plan to ensure the child's safe and appropriate care in her absence or during her times of active drug use. Under these circumstances, the juvenile court's finding that the infant was in danger of being abused or neglected by her parents because of the circumstances surrounding the adjudications of C.M. and C.W., as well as other conditions in the child's household, is not against the manifest weight of the evidence. Accordingly, the juvenile court did not err by adjudicating D.W. a dependent child under Section 2151.04(D). Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT FOLLOW THE STATUTORY MANDATES OF [SECTION] 2151.28(L) IN PROVIDING A FACTUAL BASIS IN SUPPORT OF ITS ADJUDICATION OF DEPENDENCY WHICH DID NOT PROTECT MOTHER'S DUE PROCESS

RIGHT TO BE PROPERLY INFORMED OF THE EXISTENCE OF ANY DANGERS TO THE CHILD.

**{¶24}** Mother argues that the juvenile court erred by failing to make the statutorily required factual findings to support its adjudication of D.W. as a dependent child. This Court disagrees.

**{¶25}** Section 2151.28(L) provides:

If the court, at an adjudicatory hearing. . ., determines that the child is a dependent child, the court shall incorporate that determination into written findings of fact and conclusions or law and enter those findings of fact and conclusions of law in the record of the case. The court shall include in those findings of fact and conclusions of law specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child.

**{¶26}** This Court recognizes:

Factual findings underlying the adjudication of dependency protect the parents' due process rights to be informed of the conditions of the child's environment that caused the dependency adjudication and are often relevant to subsequent proceedings in the juvenile and appellate courts to determine whether the parents did or did not remedy the conditions that caused the state to assume guardianship of their child. *See In re G.D.*, 2014-Ohio-3476, ¶ 16 (9th Dist.); *In re T.C.*, 2018-Ohio-4369, ¶ 10 (9th Dist.).

*In re I.K.-W.*, 2019-Ohio-2807, ¶ 24 (9th Dist.).

**{¶27}** In this case, the juvenile court recited the bases underlying the adjudications of C.M. and C.W. It then listed the overlapping concerns in D.W.'s case. The juvenile court noted Mother's drug use during her pregnancy and after D.W.'s birth, her pending felony drug charge, and her cessation of drug treatment services. The trial court concluded that "Mother's continued struggles with drug use, including her use of drugs while pregnant with [D.W.], demonstrate an inability or unwillingness to make appropriate choices to safeguard the wellbeing of [D.W.] and put her in danger of being abused or neglected." This Court concludes that the juvenile court's findings of fact and conclusions of law are specific enough to protect Mother's due process rights

and inform her of the conditions underlying D.W.'s dependency so that she has notice of the conditions she must work to remedy. Mother's second assignment of error is overruled.

### III.

{¶28} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

DAVID M. LOWRY, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and MARRETT W. HANNA, Assistant Prosecuting Attorney, for Appellee.

JASON JORDAN, Guardian ad Litem.