OPINION
{¶ 1} Appellants, Summer O. and Shane M., appeal the decision of the Madison County Court of Common Pleas, Juvenile Division, adjudicating their son, S.M., a dependent child, and placing him in the temporary custody of the Children Services division of the Madison County Department of Job and Family Services ("Children Services"). We affirm the trial court's decision. *Page 2 
 {¶ 2} On the day S.M. was born, Children Services filed a complaint alleging that S.M. was a dependent child because he would be residing in a home where a sibling, his sister T.M., had suffered severe physical abuse at four months of age (five bone fractures) and was found to be a dependent child. Of particular concern to Children Services were the severity of T.M.'s abuse, the fact that appellants continued to deny the seriousness of the abuse, and the fact that no one had admitted to being the perpetrator of the abuse.
 {¶ 3} The trial court held an adjudicatory hearing in August 2006. During the hearing, the trial court took judicial notice of the sibling's case; the parties stipulated to two exhibits, a certified copy of the dependency complaint for the sibling and the trial court's December 2005 entry finding the sibling to be a dependent child. By entry filed on October 10, 2006, and following a dispositional hearing, the trial court found S.M. to be a dependent child under R.C. 2151.04(D) and placed him in the temporary custody of Children Services.
 {¶ 4} Specifically, the trial court found that "[i]f permitted to return home with his parents * * * [S.M.] would be in a household where * * * [his sibling] was brutally abused by one of the four persons who would also be responsible for [his] care * * *. The grandmother and her fiancÉ are present in the parents' home often and should be considered as members of the household. * * * The Court finds that shelter care, pending disposition is necessary. There are no relatives of the child who are available and appropriate for placement. The continued residence of the child in the home would be contrary to the child's best interest and welfare."
 {¶ 5} In its October 10, 2006 entry, the trial court once again took judicial notice of the sibling's case, attached the December 2005 entry finding the sibling to be a dependent child, and incorporated the findings it had made in the sibling's case into S.M.'s entry. The relevant findings are as follows:
 {¶ 6} "The Court finds that [T.M.], at four months of age, suffered five fractures within a 14 day period. Each arm and leg contained at least one fracture. One leg contained two *Page 3 
fractures. Dr. Philip V. Scribano, in his deposition, testified that the fractures came from twisting and shaking so violently that a whiplash effect to the bone was caused. It was his opinion that the fractures could only have been caused by intention. The Court infers from the testimony of various medical experts and the medical records that the intentional injuries to [T.M.] reflect an intense purposeful fury on the part of the perpetrator.
 {¶ 7} "Only four people were present when the injuries could have occurred: the parents, the maternal grandmother, and the maternal grandmother's fiancÉ. T he four individuals live in three separate houses but spend much of their time together. * * * All four spent significant amounts of time with [T.M.] during the period in which the wounds were inflicted. None of the four has admitted to inflicting the injuries, and all of the four claim no knowledge of how the injuries were inflicted. * * * The agency through its investigation and the Court process was unable to determine who perpetrated these horrendous injuries. * * *
 {¶ 8} "The Court finds that [T.M.] cannot be returned to either the parents or the maternal grandmother for [the] reason that the perpetrator has not been identified and that the close relationship of all four family members ensures that the perpetrator will again have unsupervised access to [T.M.]."
 {¶ 9} Appellants appeal, raising three assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE DECISION OF THE [TRIAL] COURT FINDING THAT S.M. IS A DEPENDENT CHILD PURSUANT TO R.C. 2151.04(D) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 12} A trial court's dependency determination must be supported by clear and convincing evidence. See R.C. 2151.35(A)(1); Juv. R. 29(E)(4);In re S.J.J., Butler App. No.
CA2006-02-021, 2006-Ohio-6354, ¶ 11. Clear and convincing evidence is that evidence which *Page 4 
will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id., citing In reAment (2001), 142 Ohio App.3d 302, 307. An appellate court neither weighs the evidence nor judges the credibility of the witnesses; rather, appellate review of a trial court's dependency determination "is limited to whether sufficient credible evidence exists to support the trial court's determination." In re S.J.J. at ¶ 11.
 {¶ 13} Likewise, judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. In rePieper Children (1993), 85 Ohio App.3d 318, 327. When reviewing a trial court's decision on a manifest weight of the evidence basis, an appellate court is guided by the presumption that the findings of the trial court were correct; reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. In re G.S., Franklin App. No. 05AP-1321, 2006-Ohio-2530, ¶ 4.
 {¶ 14} R.C. 2151.04(D) defines a "dependent child" as any child to whom both of the following apply:
 {¶ 15} "(1) the child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child; [and]
 {¶ 16} "(2) because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
 {¶ 17} Upon reviewing the record, we find that sufficient, credible evidence supports the trial court's determination that S.M. is a dependent child under R.C. 2151.04(D). With *Page 5 
regard to R.C. 2151.04(D) (1 ), we note that the statute does not require the sibling to currently reside in the household; rather, it requires that a parent or a household member who resides in the same household as a child whose status is at issue, previously committed an act that resulted in an adjudication of neglect, abuse, or dependency regarding a sibling of that child. In re E.R., Medina App. No. 05CA0108-M,2006-Ohio-4816, ¶ 32. The trial court found that the maternal grandmother and her fiancÉ were members of the household. There was sufficient evidence to establish that S.M., if permitted to live with appellants, would reside in a household in which one of the four persons who would also be responsible for his care (appellants, the maternal grandmother, and her fiancÉ) committed an act that was the basis for the adjudication that S.M.'s sibling was dependent. Therefore, R.C. 2151.04(D)(1) was satisfied.
 {¶ 18} With regard to R.C. 2151.04(D)(2), we note that the statute does not require that S.M. be found to have been previously abused, but merely that because of the circumstances surrounding the abuse of his sibling, S.M. is in danger of being abused or neglected. In reSchuerman (1991), 74 Ohio App.3d 528, 534. As stated earlier, S.M.'s sibling had five broken bones at the age of four months. At the time the trial court held the adjudicatory hearing regarding S.M., the perpetrator of the abuse had still not been identified.
 {¶ 19} A caseworker who had been involved with the family since August 2005 testified that while appellants "recognized that the broken bones had occurred," they have never verbally admitted that abuse occurred. In addition, appellants do not admit that any one of the four persons involved in the care of the sibling may have done the abuse; rather, they surmise that another relative might have had access to the sibling during the time she was abused. The caseworker explained that without an admission, real progress toward being able to parent was not possible, the perpetrator could not receive treatment to ensure that the abuse would not happen again, and thus, S.M. was at risk of being abused. Further, while *Page 6 
appellants' progress in parenting classes had reduced the risk of abuse, it had not alleviated it. Of additional concerns were appellants' level of frustration whenever the sibling, "a very strong-willed little girl," was misbehaving, the continued lack of consistency in the way appellants discipline the sibling, and the fact that they are not "on the same page" when it comes to discipline. The caseworker testified that Shane is more willing to discipline the sibling during a tantrum than Summer. The caseworker also testified that Summer becomes very emotionally upset or distraught if the sibling is disciplined and that she then typically becomes angry at Shane. "That's a concern because if there wasn't another adult present to deflect that, that anger could then be directed toward a child."
 {¶ 20} "[T]he law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm." In re S.J.J., 2006-Ohio-6354 at ¶ 12. "A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child." In re Pieper Children, 85 Ohio App.3d at 325. In light of the foregoing, and notwithstanding appellants' progress and compliance with their case plan, and the "really good bonding and attachment" between appellants and S.M. during visitation, we find that R.C. 2151.04(D)(2) was satisfied. The trial court, therefore, properly adjudicated S.M. a dependent child. Appellants' first assignment of error is overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT ABUSED ITS DISCRETION BY TAKING JUDICIAL NOTICE OF THE DECEMBER 22, 2005 JOURNAL ENTRY FROM S.M.'S SIBLING'S CASE WHEN THE TRIAL COURT KNEW APPELLANTS WERE APPEALING THAT SPECIFIC DECISION."
 {¶ 23} An abuse of discretion is more than an error of law or judgment; rather, it implies *Page 7 
that the court's attitude is unreasonable, arbitrary, or unconscionable.In re Jane Doe I (1991), 57 Ohio St.3d 135, 137. Given that during the adjudicatory hearing (1 ) when asked by the trial court whether appellants had a response to the state's request that the trial court take judicial notice of the sibling's case, appellants' attorney specifically replied: "no objections;" (2) appellants' attorney then stipulated to the December 2005 entry finding the sibling to be dependent; and (3) appellants never called to the court's attention the fact that they were appealing the December 2005 entry, we cannot say that the trial court's judicial notice of the sibling's case was an abuse of discretion. See In re Pieper Children, 85 Ohio App.3d at 328
(an appellate court will not consider an error which the complaining party could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court). Appellants' second assignment of error is overruled.
 {¶ 24} Assignment of Error No. 3:
 {¶ 25} "AT DISPOSITION, THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING TEMPORARY CUSTODY TO CHILDREN SERVICES."
 {¶ 26} R.C. 2151.353(A)(2) provides in relevant part that if a child is adjudicated a dependent child, the trial court may commit the child to the temporary custody of a children services agency, either parent, or a relative. R.C. 2151.01(A) provides that R.C. Chapter 2151 should be liberally interpreted so as to "provide for the care, protection, and mental and physical development of children subject to [R.C. Chapter 2151], whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety."
 {¶ 27} At the time the trial court held the dispositional hearing regarding S.M., the perpetrator of the abuse on the sibling had still not been identified. A therapist at London's Mental Health Center testified that she met with Shane once and with Summer twice on their *Page 8 
own volition. However, appellants only worked on what they identified as problems. Further, because counseling was not mandated and because Summer felt she was doing well, the therapist closed the case. The therapist testified that appellants did not admit to the sibling's abuse but knew that the sibling was injured. However, they had no idea how it happened. The therapist acknowledged that because she saw appellants in a sterile environment for only a total of three hours, she could not determine whether they had sufficient coping skills.
 {¶ 28} Robin Bruno is the supervisor for Children Services. Bruno testified that when he supervised a one-hour visit between appellants and S.M., the visit went well and appellants used nice soothing tones and a very nurturing behavior. Bruno also testified, however, that (1) appellants are still not on the same page when it comes to discipline, (2) Summer still gets upset when the sibling needs to be disciplined and continues to not set limits with the sibling, and (3) while Shane has shown the most improvement in that area, his efforts are often thwarted by Summer or the grandmother. Bruno testified that at this point, it was Children Services' position that S.M. should remain in its temporary custody:
 {¶ 29} "[I]f there's not an admittance by any of the individuals for the injuries that were caused to [the sibling], * * * we feel that we can't insure the safety of either child. * * * [A]t this point [the sibling] had injuries that * * * Children's Hospital indicated were caused by abuse. We have no one admitting that * * * they caused the abuse and we're concerned about the future of the child's safety. * * * And it's a combination of the fact that still we have no one admitting that they caused the injury, and the fact that they would be the sole providers for two young children[.] * * * You know, people can change and they can improve. But you first have to admit that there's a problem, and you have to be willing to address it to make those changes."
 {¶ 30} In light of the foregoing, we cannot say that the trial court abused its discretion by placing S.M. in the temporary custody of Children Services rather than ordering that S.M. *Page 9 
live with appellants. Appellants' third assignment of error is overruled.
 {¶ 31} Judgment affirmed.
 WALSH and POWELL, JJ., concur. *Page 1