**[Cite as *In re A.W.*, 195 Ohio App.3d 379. 2011-Ohio-4490.]**

STATE OF OHIO        )                    IN THE COURT OF APPEALS

)ss:               NINTH JUDICIAL DISTRICT

COUNTY OF SUMMIT    )

In re A.W.

C.A. No.      25601

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 10 03 212

DECISION AND JOURNAL ENTRY

Dated: September 7, 2011

Denise E. Ferguson, for appellant.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Heaven DiMartino, Assistant Prosecuting Attorney, for appellee.

BELFANCE, Presiding Judge.

**{¶1}** Appellant, Brea M. ("Mother"), appeals from the decision of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her minor child, A.W., to be dependent and placed her in the temporary custody of the Summit County Children Services Board ("CSB"). This court reverses.

INTRODUCTION

{¶2} The central issue in this case stems from CSB's removal of a newly born infant directly from the hospital in the belief that she was at risk of harm because an older sibling had suffered injuries more than two years earlier. Mother has argued that there is no evidence that this infant is at similar risk of harm, or more precisely, that she is a dependent child pursuant to R.C. 2151.04(D).

## BACKGROUND

{¶3} Mother's first child, F.M., was born on August 14, 2007. At four months of age, F.M. was taken to the hospital, where she was found to have a hematoma on her brain and bruising on her chest. The child was subsequently adjudicated to be abused and dependent by the juvenile court pursuant to a stipulation by the parties. No perpetrator was ever identified. There is no evidence that either of A.W.'s parents was involved in harming F.M., and no criminal charges were brought against anyone. Mother initially engaged in a reunification plan, but at 17 years of age, she ultimately decided to surrender her parental rights.

{¶4} At the conclusion of the proceedings regarding F.M., the CSB caseworker learned that Mother was pregnant with another child. Thereupon, the caseworker initiated inquiries to area hospitals, which resulted in CSB's learning when and where Mother delivered A.W. Two days after the child's birth on March 15, 2010, CSB removed the infant from the hospital, based upon a claim that she was at risk of harm. The agency sought and obtained temporary custody upon an adjudication of dependency. Mother has now appealed and has assigned six errors for review.

### First Assignment of Error

The trial court committed reversible error when it improperly found dependency under [R.C.] 2151.04(D) as that finding was against the manifest weight of the evidence.

{¶5}　In her first assignment of error, Mother argues that the trial court finding of dependency under R.C. 2151.04(D) is not supported by the weight of the evidence.

{¶6}　In its complaint, CSB alleged that A.W. was dependent under R.C. 2151.04(C), maintaining that the child's "condition or environment is such as to warrant the state, in the interest of the child, in assuming the child's guardianship." The agency subsequently amended its complaint to also include R.C. 2151.04(D).

{¶7}　Following the adjudicatory hearing, the magistrate found A.W. to be dependent under R.C. 2151.04(C). Thereafter, the trial judge rejected that finding and found A.W. to be dependent under R.C. 2151.04(D) instead. On appeal, Mother challenges the trial court finding that A.W. was dependent under R.C. 2151.04(D). CSB does not challenge the trial court's determination that A.W. was not dependent pursuant to R.C. 2151.04(C).

## STANDARD OF REVIEW

{¶8}　In determining whether an adjudication of a child as abused, neglected, or dependent is against the manifest weight of the evidence, this court " '[reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]' " *In re M.H.*, 9th Dist. No. 09CA0028, 2009-Ohio-6911, at ¶ 14, quoting *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387.

{¶9}　Moreover, an adjudication of abuse, neglect, or dependency must be established by clear and convincing evidence. Juv.R. 29(E)(4) and R.C. 2151.35(A). Clear and convincing evidence is evidence that will produce in the mind of the trier of fact a firm belief or conviction

as to the facts sought to be established. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368.

R.C. 2151.04(D)

{¶10} R.C. 2151.04(D) provides that a dependent child is a child to whom both of the following apply:

> (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

> (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

R.C. 2151.04(D).

{¶11} A finding of dependency under this section requires proof that both of the above provisions apply. Thus, a lack of clear and convincing evidence on either paragraph will prevent a finding of dependency under R.C. 2151.04(D). Under the first paragraph of the statute, CSB was required to prove by clear and convincing evidence that A.W. would be residing in a household in which a member of that household had committed an act that was the basis of an adjudication that F.M. was an abused or dependent child. Alternatively, CSB was required to prove by clear and convincing evidence that A.W. would be residing in a household in which a member of that household committed an act that was the basis of an adjudication of abuse, neglect, or dependency as to any other child residing in A.W.'s household. See *In re P.G.*, 2d Dist. No. 22706, 2008-Ohio-4015, at ¶ 24 (statutory language suggests that if the previously harmed child is not a sibling of the child at issue, then "it would make sense" that those two children should live in the same household before R.C. 2151.04(D) is applicable). In this case, there is no evidence that any child who was not a sibling would be residing in A.W.'s household.

Therefore, the focus of this matter is upon that portion of the statute that refers to an adjudication of abuse, neglect, or dependency as to a sibling.

{¶12} Mother contends that CSB did not present evidence that satisfies the requirements of R.C. 2151.04(D)(1) because F.M. is not A.W.'s sibling, as Mother's parental rights to F.M. were terminated at the time of A.W.'s birth. We disagree. In examining the language of the statute, the legislature did not qualify the word "sibling" in any manner. Thus, although there may have been a legal termination of Mother's parental rights, this did not negate the sibling relationship that was established by virtue of F.M. and A.W.'s common biological mother. Consequently, for purposes of R.C. 2151.04(D), F.M. and A.W. are siblings.

{¶13} Mother next argues that CSB failed to satisfy R.C. 2151.04(D)(1) because F.M. would not be residing in the household with A.W. Although the parties have extensively debated the meaning of the word "household" as applied to the statute, that issue is not dispositive. This court has previously rejected Mother's interpretation of R.C. 2151.04(D)(1) on this point. In *In re E.R.*, we held that when the previously harmed child and the child at issue are siblings, the child at issue is not required to reside in the same household as the sibling who had previously been harmed. *In re E.R.*, 9th Dist. No. 05CA0108-M, 2006-Ohio-4816, at ¶ 32. Other courts considering the question have similarly concluded that the phrase "who resides in the household" modifies "any other child" and not "a sibling of the child." Id. See *In re M.W.,* 7th Dist. No. 07 BE 40, 2008-Ohio-4525, at ¶ 18, citing *In re S.M.*, 12th Dist. No. CA2006-08-030, 2007-Ohio-2297, at ¶ 17, and *In re P.G.*, 2008-Ohio-4015, at ¶ 24. The consequence of this conclusion is that R.C. 2151.04(D)(1) is applicable to this case, notwithstanding the fact that A.W. would not be residing in the same household as her sibling, F.M. See *In re E.R.*, 2006-Ohio-4816, at ¶ 32.

{¶14} Finally, Mother contends that CSB failed to demonstrate that the person who committed the act that resulted in the adjudication as to F.M. would be residing with A.W. as required under R.C. 2151.04(D)(1). We agree.

{¶15} R.C. 2151.04(D)(1) specifically requires that A.W. reside "in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication" of A.W.'s sibling. Only three people were expected to be residing with A.W.: Mother, the maternal grandmother, and Mother's 16-year-old sister. Significantly, the record contains no evidence whatsoever that any of those individuals committed an act that formed the basis of the adjudication regarding F.M., as is required by R.C. 2151.04(D)(1).

{¶16} CSB acknowledges that it has no evidence that Mother abused or neglected F.M., even though it reportedly conducted an investigation. Nor is there any evidence that the maternal grandmother or Mother's sister committed such acts. In fact, no one was charged with or convicted of harming F.M. There is no medical evidence in the record regarding any of the details surrounding F.M.'s condition. Nor is there any evidence as to when F.M. might have been injured, who took her to the hospital, whether Mother reacted appropriately upon learning of F.M.'s condition, what treatment the child received, the child's current condition, or whether any part of the child's condition was the result of an intentional act, an accident, or even a medical condition. The agency presented no evidence that a member of A.W.'s household had "committed an act" that was the basis for F.M.'s adjudication. Thus, CSB failed to connect any members of A.W.'s household to F.M.'s condition in order to demonstrate that a similar risk of harm existed for A.W.

{¶17} Notwithstanding, CSB has argued that the statute is satisfied simply by virtue of Mother having custody of F.M. In other words, Mother should be deemed to have committed an

act that resulted in F.M.'s adjudication because F.M. was in her care and custody at the time that harm befell F.M. In effect, CSB contends that because Mother had custody of her child, she was responsible for everything that happened to her, regardless of whether Mother was present, involved, or had any knowledge of the situation and regardless of whether F.M.'s condition was the result of intention, accident, or otherwise.

{¶18} Of course, parents are always ultimately "responsible" in a broad sense for their children, but we have not found any authority that provides such a sweeping interpretation of the "committed an act" language contained in R.C. 2151.04(D). In ascertaining legislative intent and applying a statute, this court is obligated to give effect to the words used in a statute. *Pearn v. DaimlerChrysler Corp.*, 148 Ohio App.3d 228, 2002-Ohio-3197, at ¶ 63, citing *Lesnau v. Andate Ent., Inc.* (2001), 93 Ohio St.3d 467, 471. R.C. 2151.04(D) contains language that requires that a member of A.W.'s household "committed an act" that formed the basis of an adjudication of her sibling. In keeping with the plain language of the statute, we conclude that there must be clear and convincing evidence that some person in the child's household committed an act that resulted in an adjudication of that child's sibling. See *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006 Ohio-954, ¶ 52 ("An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language, and a court cannot simply ignore or add words"). Our application of the plain language of the statute is also consistent with our understanding of the legislative intent of R.C. 2151.04(D): "to protect the next child from a similar fate." *In re E.R.,* 2006-Ohio-4816, at ¶ 30.

{¶19} The Twelfth District Court of Appeals has addressed a situation in which the perpetrator against the first child was also unknown, but ample facts and evidence were placed upon the record, which permitted the trial court to conclude that the second child would be

residing with one of the four people responsible for the prior abuse. See *In re S.M.*, 12th Dist. No. CA2006-08-030, 2007-Ohio-2297. In *S.M.,* the record contained specific findings by the trial court that the first child had been intentionally and brutally injured by one of four people who were also members of the second child's household and would be responsible for that child's care. Id. at ¶ 4. Therefore, on the basis of the record before it, the reviewing court was able to affirm the trial court's finding that the continued presence of the same four people put the second child in danger of being abused or neglected. Id. at ¶ 17. See also *In re Pieper Children* (1993), 85 Ohio App.3d 318, 323-324 (separation between mother and abusive father was a sham, permitting the conclusion that restoring custody to mother would subject the children to possible further abuse). In marked contrast to the detailed record and specific findings by the court in *S.M.*, no such evidence was presented in this case, and no detailed findings were made based upon the record evidence.

{¶20} Based upon the record before this court, we find that CSB failed to present clear and convincing evidence that A.W. would be residing in a household with a person who committed an act that was the basis for the adjudication regarding F.M. Accordingly, CSB has not clearly and convincingly established the statutory requirements of R.C. 2151.04(D)(1). Having concluded that CSB failed to meet its burden of proof regarding R.C. 2151.04(D)(1), this court need not consider R.C. 2151.04(D)(2). Nor have we considered R.C. 2151.04(C), because that statute was not properly before us. Mother's first assignment of error is sustained.

CONCLUSION

{¶21} Mother's first assignment of error is sustained. The remaining assignments of error need not be addressed. See App.R. 12(A)(1)(c). The judgment of the Summit County

Court of Common Pleas, Juvenile Division, is reversed, and the case is remanded for further proceedings.

Judgment reversed
and cause remanded.

DICKINSON, J. concurs.

CARR, J. dissents.

CARR, J., dissenting.

{¶22} I respectfully dissent.

{¶23} I agree that CSB has not challenged the trial court's determination that A.W. was not dependent pursuant to R.C. 2151.04(C). Therefore, I am unable to render an opinion as to the propriety of that determination.

{¶24} I disagree, however, with the majority's conclusion that CSB failed to present clear and convincing evidence that A.W. was residing in a household in which a person residing therein committed an act that was the basis for an adjudication that A.W.'s sibling was an abused, neglected, or dependent child so as to find A.W. dependent pursuant to R.C. 2151.04(D). I would not construe the phrase "committed an act that was the basis for an adjudication" as narrowly as does the majority. I do not believe that the legislature intended to protect only those children whose siblings had been abused or neglected under known circumstances by clearly identifiable perpetrators who had been held criminally accountable. Rather, I believe that the legislature intended to provide a safety net for all children whose siblings had been subjected to circumstances giving rise to their abuse, neglect, or dependency.

{¶25} In this case, A.W.'s sibling was adjudicated abused and dependent based on Mother's stipulation to those facts. Mother's act of stipulating that F.M. was abused and dependent resulted in that child's adjudication as such. Notwithstanding the absence of evidence

regarding the specific circumstances resulting in F.M.'s injuries, I would conclude that Mother's stipulation that the child was both abused and dependent constituted the commission of an act that formed the basis of the child's adjudication pursuant to R.C. 2151.04(D)(1).

{¶26}  Moreover, I would conclude that the circumstances surrounding F.M.'s abuse and dependency, specifically the child's sustaining of unusual, unexplained, and significant injuries, indicate that A.W. is in danger of being abused or neglected by a person in the household so as to satisfy R.C. 2151.04(D)(2).  Accordingly, I would affirm the juvenile court's adjudication of dependency.