[Cite as *In re C.G.*, 2019-Ohio-2102.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE C.G. AND G.S.

C.A. No.     29171

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.     DN 18-03-0238
                      DN 18-03-0239

DECISION AND JOURNAL ENTRY

Dated: May 29, 2019

HENSAL, Judge.

{¶1}     Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her child C.G. a neglected and dependent child, and her child G.S. a dependent child. This Court affirms in part, reverses in part, and remands.

I.

{¶2}     Mother is the biological mother of four children: two older boys who are not involved in this appeal, C.G. (d.o.b. 9/24/09), and G.S. (d.o.b. 1/25/13). Father G. is the biological father of C.G. and his older brothers. Father S. is the biological father of G.S. Mother is married to a man who is not the father of any of the children. All four children lived with Mother and her husband.

{¶3}     In March 2018, Summit County Children Services Board ("CSB" or "the agency") filed complaints alleging the children to be abused, neglected, and dependent based on allegations of drug use, domestic violence, and a suicide attempt in the home, as well as the

failure of the children to attend school regularly. C.G. and his older brothers were placed in the temporary custody of Father G. under an order of protective supervision by the agency. G.S. was placed with a relative under the emergency temporary custody of CSB.

{¶4} On May 2, 2018, the magistrate held an adjudicatory hearing solely regarding C.G. and his brothers because of the failure of service on Father S. The magistrate issued a decision dismissing all allegations regarding the two older children, dismissing some allegations regarding C.G., but finding that C.G. was a neglected and dependent child. CSB filed objections challenging the dismissal of the allegations.

{¶5} The magistrate issued a second decision, purportedly after a second hearing, adjudicating G.S. a dependent child. Mother filed an objection solely as to the adjudication of G.S. When she later supplemented her objection, she included evidentiary challenges to the adjudication of C.G., as well.

{¶6} In the meantime, the magistrate held dispositional hearings regarding the children. C.G. was placed in the temporary custody of Father G. with protective supervision by CSB. G.S. was placed in the temporary custody of the agency. In both cases, Mother was awarded supervised visitation. No party objected to the dispositional orders.

{¶7} The juvenile court issued a judgment in which it overruled CSB's objections and dismissed the complaints regarding the two oldest children. The juvenile court, considering Mother's objections as to both C.G. and G.S., overruled Mother's objections and adjudicated C.G. a neglected and dependent child, and adjudicated G.S. a dependent child. The trial court maintained the children in their prior custodial dispositions. Mother filed a timely appeal in which she raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN FINDING THE MINOR CHILD [C.G.] NEGLECTED AS DEFINED IN OHIO REVISED CODE 2151.03(B) AS THE STATE OF OHIO FAILED TO PROVIDE SUFFICIENT EVIDENCE FOR SUCH A FINDING AND THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶8}** Mother argues that the juvenile court erred in finding that C.G. was a neglected child.[1] This Court disagrees.

**{¶9}** Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶10}** This Court reviews as follows:

In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses

---

[1] The juvenile court analyzed C.G.'s neglect with reference to Revised Code Section 2151.03(A)(3), as alleged in the complaint. In its order, however, the trial court adjudicated the child neglected pursuant to Revised Code Section 2151.03(B), in what appears to be a typographical error, as that provision does not constitute grounds for neglect.

and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Alterations sic.) *In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8 (9th Dist.).

{¶11} Mother challenges the finding that C.G. is a neglected child as alleged in the complaint. CSB alleged that C.G. was neglected pursuant to Revised Code Section 2151.03(A)(3) which defines a neglected child as one "[w]hose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being[.]" This Court has held that chronic truancy, standing alone, is not grounds for adjudicating a child neglected. *In re M.O.*, 9th Dist. Summit No. 25312, 2010-Ohio-5107, ¶ 14-16. Nevertheless, a child's poor attendance at school may be considered in conjunction with other facts in determining neglect; it may simply not form the sole basis of that finding. *Id.* at ¶ 16.

{¶12} In this case, the juvenile court acknowledged our precedent rejecting chronic truancy as a sole basis for a finding of neglect pursuant to Revised Code Section 2151.03(A)(3). While the juvenile court considered the child's numerous school absences as one underlying fact, it based its adjudication on several other concerns in C.G.'s home. This Court concludes that there was clear and convincing evidence of the child's neglect beyond only his school absences.

{¶13} While under Mother's care, C.G. had very poor attendance, missing approximately 190 hours of school in the past academic year. Once a child misses 65 hours in class, the school contacts the parent to discuss the matter. School officials had a difficult time making contact with Mother after C.G. began missing school and Mother failed to call the child

off for any reason, excused or otherwise. After C.G. missed 72 hours of school, the assistant principal implemented an intervention plan pursuant to school protocol. Again, the school had a difficult time reaching Mother to discuss the plan. Accordingly, the school mailed the plan to Mother when attempts to reach her in person were unsuccessful. Notwithstanding the implementation of the intervention plan, C.G. missed another 112 hours of school while under Mother's care. The assistant principal emphasized the need for consistent school attendance to ensure that a child is present for academic content necessary to build skills required for future grade levels, and to allow a child to develop a sense of emotional and social well-being.

{¶14} The assistant principal noted that C.G., when he made it to school while in Mother's care, was withdrawn. Once the child was removed from Mother's care and placed with Father G., C.G.'s attendance and demeanor improved greatly. C.G. has participated in small group counseling in school for two years. His counselor described him as disruptive, antsy, and prone to shutting down as a coping mechanism while the child was in Mother's care. She never saw C.G. smile until he was placed with Father G. Since then, the child laughs, makes jokes, and no longer appears as though the "weight of the world is on his shoulders." As C.G. struggled with issues in school, the counselor attempted on numerous occasions to contact Mother with no success. Despite multiple letters and follow up calls by the counselor, Mother made no response until appearing at a February 5, 2018 attendance meeting, shortly before the child was removed from her care.

{¶15} At a family team decision meeting, Mother admitted to the caseworker that she has issues with alcohol abuse. According to the school counselor, C.G. knows that Mother is sick and drinks too much. Mother admitted to the agency caseworker to becoming so intoxicated one evening when she had another younger child at home that she had to find someone to pick up

that child. When a relative arrived to pick up that child, she found Mother on the floor and vomiting. Mother admitted posting messages on Facebook that evening referencing suicide hotlines, going to the hospital, and requesting antidepressant medications. However, Mother denied attempting suicide that evening.

{¶16} Based on Mother's disclosure that she abused alcohol, CSB requested that Mother submit to an oral swab for substances. Although Mother admitted to having consumed "a shot and a beer" to relax the night before and denied any drug use, Mother tested positive for methamphetamine and amphetamine. The toxicologist who tested Mother's sample testified that saliva tests like the one to which Mother submitted show substance use within the past one to two days. The toxicologist further testified that false positive results are ruled out in confirmation testing of samples. In addition, the toxicologist testified that none of the medications that Mother listed she was using, including Percocet, would result in a false positive for the presence of methamphetamine.

{¶17} In addition to admitting issues with alcohol, Mother admitted to the caseworker that there were domestic violence issues between Mother and her husband, although Mother denied that her children in the home witnessed it even though they were present at the time. At a minimum, the older children in the home, however, were in fact aware of the domestic violence issues between Mother and her husband. A background check of Mother's husband indicated that he had drug-related criminal convictions. The older children reported observing Mother using marijuana and alcohol, drinking in the bathtub and falling asleep there, and leaving the two older children alone at night to watch their younger siblings, including C.G. When questioned as to why she was unable to get up to get the children to school, Mother told the caseworker that she suffered from narcolepsy.

{¶18} Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice by adjudicating C.G. a neglected child. The evidence established that Mother has substance abuse issues that have prevented her from meeting the educational, emotional, and well-being needs of C.G. Mother admitted her issue with alcohol abuse, and a drug test confirmed her use of methamphetamine and amphetamine, as well. In addition, Mother would use alcohol to relax to the point of falling asleep in the bathtub, leaving any children in the home to fend for themselves. When issues arose regarding C.G. at school, school officials and counselors would not be able to reach Mother to address their concerns for the child's well-being. Whether or not she was incapacitated by her use of alcohol or drugs at any given time, Mother was frequently unresponsive to outreach by professionals to address concerns regarding C.G. On the other hand, after C.G. was removed from Mother's care and placed with Father G., the child's demeanor brightened and his school attendance drastically improved, evidencing that his educational, emotional, and general needs were being met. As the clear and convincing evidence demonstrated that Mother was neglecting C.G. by refusing to provide proper care for his educational needs, emotional health, and general well-being, the juvenile court's adjudication of C.G. as a neglected child is not against the manifest weight of the evidence. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FINDING THE MINOR CHILDREN [C.G.] AND [G.S.] DEPENDENT AS DEFINED IN OHIO REVISED CODE 2151.03(C) AS THE STATE OF OHIO FAILED TO PROVIDE SUFFICIENT EVIDENCE FOR SUCH A FINDING AND THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶19}** Mother argues that the juvenile court erred by finding that C.G. and G.S. were dependent children. This Court agrees in part, and disagrees in part.

**{¶20}** Mother challenges the juvenile court's findings that C.G. and G.S. were dependent children as alleged in the complaints. A dependent child is one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" R.C. 2151.04(C).

**{¶21}** The manifest weight of the evidence standard of review and definition of clear and convincing evidence are set forth above. This Court reiterates that the agency has the burden of proving its allegations of dependency, neglect, or abuse by clear and convincing evidence at an adjudicatory hearing. *See In re Hunt*, 46 Ohio St.2d at 380. It is, therefore, axiomatic that, in the absence of an adjudicatory hearing, the juvenile court lacks the evidentiary basis to adjudicate the child. Moreover, the lack of a full adjudicatory hearing deprives a parent of due process to be present and heard, requiring reversal. *See In re A.G.*, 9th Dist. Summit No. 28673, 2017-Ohio-9133, ¶ 13.

**{¶22}** In the case of G.S., the record indicates that the juvenile court never conducted a separate adjudicatory hearing regarding that child. On May 9, 2018, the magistrate asserted on the record that the adjudicatory hearing that day would only proceed as to C.G. and his two older brothers, not as to G.S. due to a lack of service on Father S. CSB presented its case accordingly, solely as to the allegations regarding C.G. and his brothers. At the conclusion of the May 9, 2018 hearing, the magistrate clarified that the date for the future adjudicatory hearing regarding G.S. would be May 22, 2018. The assistant prosecutor informed the court that she would be presenting the testimony of the caseworker at that hearing but that she had not yet investigated to determine whether she would be presenting the testimony of any other witnesses that day.

Despite the fact that the guardian ad litem interjected that CSB had rested its case regarding the adjudication of G.S. and that Father S.' absence at the hearing rendered the child dependent, the guardian ad litem had no authority to speak on behalf of the agency or the juvenile court. Moreover, Father S.' absence arose out of the lack of service on him.

{¶23} In her decision purporting to adjudicate G.S. a dependent child, the magistrate relied on the evidence presented at the May 9 hearing, writing, "Original testimony was taken on 5/9/18." There is no indication that a separate evidentiary hearing took place on May 22. In the absence of an adjudicatory hearing at which CSB presented clear and convincing evidence of the allegations in its complaint regarding G.S., the adjudication of G.S. as a dependent child cannot stand. Mother's second assignment of error as it relates to G.S. is sustained.

{¶24} This Court concludes that there was clear and convincing evidence of C.G.'s dependency, however. The evidence presented at the May 9, 2018 hearing demonstrated that C.G. was living in a home environment with Mother where he was exposed to domestic violence; and where Mother's substance abuse issues prevented her from guiding, protecting, and supervising the child, and meeting his educational, emotional, and general well-being needs. Accordingly, the juvenile court's finding that C.G. is a dependent child is not against the manifest weight of the evidence. Mother's second assignment of error as it relates to C.G. is overruled.

III.

{¶25} Mother's first assignment of error is overruled. Mother's second assignment of error is overruled as it relates to C.G., but it is sustained as it relates to G.S. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to Appellant and CSB.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

RONALD T. GATTS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

BRIAN M. ASHTON, Attorney at Law, for Appellee.

ALEXANDRA HULL, Guardian ad Litem.

V.S., pro se, Appellee.