**[Cite as *In re B.W.*, 2022-Ohio-604.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: B.W.
      H.W.

C.A. No.     30011

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 20 11 0775
               DN 20 11 0776

DECISION AND JOURNAL ENTRY

Dated: March 2, 2022

HENSAL, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated two of her children dependent and further ordered that Appellee Summit County Children Services Board ("CSB" or "the agency") was not required to use reasonable efforts to facilitate the reunification of the children with Mother. This Court affirms.

I.

{¶2} Mother is the biological mother of B.W. (d.o.b. 12/14/17) and H.W. (d.o.b. 5/20/19). Paternity is established for H.W. B.W. has a presumed legal father due to that man's marriage to Mother at the time of the child's birth, but another man is B.W.'s alleged biological father. None of the three men identified as the children's fathers participated in any significant way below or are parties to this appeal.

{¶3} Mother is also the biological mother of five older children, all of whom were subjects of prior dependency/neglect/abuse cases in the juvenile court. While one child was ultimately placed in the legal custody of a third party, Mother's parental rights were terminated as to the remaining four children who were placed in the permanent custody of CSB and later adopted. B.W. was also the subject of a complaint filed by the agency when she was a newborn. B.W. was removed and adjudicated a dependent child but later returned to Mother's legal custody.

{¶4} In September 2020, CSB filed complaints and obtained emergency temporary custody of B.W. and H.W. The allegations underlying those complaints are not in this record. The agency dismissed those complaints before an adjudicatory hearing was held. On November 23, 2020, however, CSB filed new complaints in which it alleged that B.W. and H.W. were neglected and dependent children based on concerns of domestic violence and drug use in the home, limited food and supplies for the children, various unsanitary conditions, and historical concerns regarding Mother's parenting abilities. While the agency sought interim orders of emergency temporary custody and temporary custody in the complaint, it also sought an award of permanent custody of the children. After a shelter care hearing, the magistrate issued an emergency order of temporary custody.

{¶5} CSB filed a proposed case plan which included, among other things, five objectives for Mother. Her case plan objectives related to basic needs, chemical dependency, mental health, developmental disabilities, and parenting.

{¶6} After an adjudicatory hearing, the magistrate dismissed the agency's allegation of neglect and allegations of dependency pursuant to Revised Code Sections 2151.04(A) and (B). The magistrate concluded, however, that CSB had proven its allegations of the children's

dependency pursuant to Sections 2151.04(C) and (D). Mother filed a timely objection to the magistrate's decision. She argued that the agency failed to meet its burden of proof regarding its dependency allegations. Mother and CSB fully briefed the issue raised by Mother's objection.

{¶7} While the objection was pending, CSB filed a motion for a reasonable efforts bypass determination pursuant to Section 2151.419(A)(2)(e), which requires the juvenile court to relieve the agency of its obligation to provide reunification efforts for a parent whose parental rights with respect to a sibling of the subject child(ren) were previously involuntarily terminated. Mother opposed the agency's motion, arguing that the statute was unconstitutional.

{¶8} CSB also moved for temporary custody of the children, as the agency had been unable to perfect service of its combined complaint and motion for permanent custody on one of the fathers. At the dispositional hearing, Mother stipulated to an order placing B.W. and H.W. in CSB's temporary custody. The juvenile court further adopted the agency's case plan as its order.

{¶9} When the juvenile court ruled on Mother's objection, it sustained the objection in part and concluded that CSB failed to prove by clear and convincing evidence that the children were dependent pursuant to Section 2151.04(C). The juvenile court overruled Mother's objection, however, as to the remaining allegation of dependency. Finding that the circumstances surrounding the prior dependency, neglect, and abuse adjudications of the children's siblings and the other conditions in the household of B.W. and H.W. put those two children in danger of abuse or neglect by Mother or members of her household, the juvenile court adjudicated B.W. and H.W. dependent pursuant to Section 2151.04(D)(1)(2). By a separate judgment entry, after concluding that the statutory scheme was not unconstitutional, the juvenile court also granted CSB's motion for a reasonable efforts bypass determination and relieved the agency of its obligation to facilitate reunification of the children with Mother.

{¶10} Mother filed a timely appeal which this Court dismissed on CSB's motion after Mother failed to timely file her appellate brief. Mother moved for reconsideration and this Court reinstated the appeal and accepted Mother's brief instanter. Mother raises two assignments of error for consideration.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY ADJUDICATING THE MINOR CHILDREN AS DEPENDENT CHILDREN, AS THE ADJUDICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Mother argues that the juvenile court's finding that B.W. and H.W. are dependent children pursuant to Section 2151.04(D) was against the manifest weight of the evidence. This Court disagrees.

{¶12} Juvenile dependency, neglect, and abuse cases are initiated by the filing of a complaint. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} This Court reviews as follows:

In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Alterations sic.)  *In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8 (9th Dist.).

{¶14}  Mother challenges the finding that B.W. and H.W. were dependent pursuant to Section 2151.04, which, in relevant part, defines "dependent child" as any child:

(D) To whom both of the following apply:

(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

{¶15}  With regard to a finding of dependency under this subsection, this Court has recognized the following:

It is clear that, with the addition of [Section] 2151.04(D), the legislature considered a parent's prior history with a child welfare agency significant in regard to a determination that a subsequent child might be dependent.  Further, while [Section] 2151.04(D)(2) requires that the trial court base its finding of dependency, in part, on "other conditions in the household of the child," the legislature did not limit which conditions may be considered.

*In re W.C.*, 9th Dist. Summit No. 22356, 2005-Ohio-2968, ¶ 18.  Moreover, "[Section] 2151.04(D) allows the trial court to make a determination that a child is dependent *before* any actual harm is suffered by the child as a result of previous acts by the parents and

contemporaneous conditions * * *[.]" *In re T.P.-M.*, 9th Dist. Summit No. 24199, 2008-Ohio-6437, ¶ 11.

{¶16} In this case, the evidence establishes, and Mother does not dispute, that her parental rights were involuntarily terminated as to four other children in Mother's household who had been adjudicated dependent and neglected. Mother argues, however, that CSB failed to prove by clear and convincing evidence that the circumstances surrounding the dependency and neglect of those siblings still existed and that other conditions in Mother's household put B.W. and H.W. in danger of abuse or neglect by Mother or other members of her household.

{¶17} CSB presented the testimony of three witnesses in its case in chief. A certifying scientist from Forensic Fluids Laboratories authenticated two toxicology reports which established that Mother tested negative for eleven distinct substances on September 28, and October 1, 2020. The agency intake caseworker testified, however, that Mother refused to submit to an oral swab as the caseworker requested during her initial visit to Mother's home on September 24, 2020.

{¶18} The caseworker testified that CSB received a referral about concerns that Mother and her live-in boyfriend were using methamphetamine in the presence of the children, that there were incidents of domestic violence in the home, and that the children were subjected to "excessive discipline" by Mother's boyfriend. Examples of the "excessive discipline" included "spanking them, holding them by the hand[,] * * * if they were not behaving, putting them in the corner." Based on the referral, the caseworker visited Mother's home the next day without first reviewing her history with the agency.

{¶19} Mother welcomed the caseworker into her home for nearly two hours to discuss the concerns raised by the referral and observe the conditions in the home. The first thing the

caseworker noticed was that Mother had a gash on her face and two black eyes. Two adult males were sharing the home with Mother and the children. One of those men was Mother's boyfriend.

{¶20} Mother's boyfriend was at home during the visit. The caseworker testified that the boyfriend was "very jittery[,]" dominated the conversation, and looked at Mother as she answered questions. When the boyfriend left for half an hour, Mother told the caseworker that he was "almost controlling." Mother denied that her boyfriend was abusive or that there was any domestic violence in the home. When the caseworker inquired about the injuries to Mother's face, Mother explained that B.W. had "head butted" her. By the time of the adjudicatory hearing, the caseworker became skeptical regarding Mother's explanation, based on the boyfriend's behavior during the visit, Mother's admission of his controlling nature, and Mother's history of maintaining relationships with abusive men.

{¶21} The caseworker asked Mother about drug use in the home. Mother denied that she was using drugs but got angry when the caseworker requested that she submit to an oral swab. Mother did not address whether her boyfriend or the other man in the house used drugs.

{¶22} The caseworker described the adequacy of the home as "very marginal." There were holes in the walls; cigarette butts scattered on the floors throughout the home, including in the children's bedroom; a broken television turned to the wall; and limited food in the home. The caseworker acknowledged that the amount of food was "enough to support the two little girls[,]" although it would not have been enough to also sustain Mother and the two adult men living in the home. Although there was a fully functional bathroom on the first floor, there was no door to ensure privacy. The bathroom on the second floor was not functional at all. The ceiling in the closet in the children's bedroom was collapsing.

{¶23} The other man in the home, "Mike," lived in the basement. There was a door leading from the inside of the home to the basement but no evidence of any other ingress to the basement quarters. Mike was a friend of H.W.'s father A.W., who Mother admitted had been physically abusive to her during their relationship and had served time in prison for domestic violence against Mother. There was no evidence as to why Mother was allowing Mike to live in her home. Although Mother claimed to have run a background check on Mike, she could not provide any information about him.

{¶24} Mother informed the caseworker that the home belonged to a friend and that she was living there rent-free, having agreed to make repairs to the home in lieu of paying rent. She had no lease. Moreover, Mother could not name the friend who owned the home. The caseworker did not know how long Mother had been living in the home, but it did not appear as though any repairs had yet been made.

{¶25} Before leaving the home, the caseworker told Mother that she needed to clean up anything on the floors that the young children could put in their mouths. She testified that she did not remove the children based on her home visit because "[i]t was not severe enough to remove based on the home conditions." Despite the "marginal" conditions, the caseworker observed no drugs or drug paraphernalia in the home. Despite the limited food in the home, the children did not appear underfed.

{¶26} The caseworker admitted that she only had seven months' experience in the intake department at the time of the adjudicatory hearing and was not a licensed social worker. As she had only a few months' experience when she conducted the home visit, the caseworker called the police after she left Mother's home to request a welfare check and a second opinion regarding the children's safety in that environment. The investigating police officer testified that the

caseworker had suspected that Mother and her boyfriend were under the influence of drugs during the home visit.

{¶27} Officer Hacimuezzin of the Akron Police Department arrived a few hours after the caseworker left Mother's home. When he arrived, Mother was feeding both children who appeared happy. Mother did not appear to be overwhelmed by the responsibilities of caring for her children. Neither Mother nor her boyfriend appeared to be under the influence of drugs. Mike, the other man living in the home, was drinking a beer in the backyard but he did not appear intoxicated.

{¶28} The officer testified that Mother let him walk through the entire home. Although it was "a little messy and a little unorganized" and needed some repairs, there was "nothing to an extent of, you know, major concern." There was food in the refrigerator. The bathroom and shower on the first floor were in working order, although the second floor bathroom was not functional. After walking through the entire home, including the basement, the officer saw no signs of drugs or paraphernalia. Mother, however, told the officer that "she believes Mike was using drugs." Mother further reported that she had told Mike he must vacate the home, at the caseworker's suggestion. The officer confirmed that Mike agreed to leave in a few days.

{¶29} The officer testified that both Mother's live-in boyfriend and Mike had warrants for their arrests on drug-related charges. Mike had two misdemeanor warrants, while Mother's boyfriend had a warrant for a felony drug possession charge. The officer could not execute those warrants, however, because they were issued by other counties that refused to accept such alleged offenders into jail based on current Covid-19 guidelines.

{¶30} Officer Hacimuezzin did not take the children into protective custody because he found nothing to indicate an "immediate danger to the children in the household." After leaving Mother's home, he reported his findings to the agency caseworker.

{¶31} In the meantime, the caseworker had reviewed Mother's history with CSB regarding her five older children. Despite her observations during her home visit and the officer's report, both of which failed to compel the removal of the children for safety reasons, the caseworker filed complaints alleging the children's dependency and neglect and seeking their removal and an emergency order of temporary custody to CSB. The caseworker testified that the agency did not hold a team decision meeting first because she believed that the historical concerns regarding Mother were severe enough to warrant pursuing emergency temporary custody of the children. The caseworker identified the historical concerns that led the agency to file its complaints as Mother's pattern of relationships with physical abusers and drug users in her home, the prior removals of her five older children, and the exposure of young and vulnerable children to conditions from which they were unable to defend themselves. Although she acknowledged that there were some concerns regarding the condition of Mother's home, the caseworker testified that when deciding to file its complaints, "the focus [of CSB] wasn't on the home at that very moment."

{¶32} While CSB has not presented the strongest case, this Court cannot conclude that the finder of fact clearly lost its way and created a manifest miscarriage of justice by adjudicating B.W. and H.W. dependent children. The circumstances underlying the adjudications of Mother's five older children involved unsafe physical conditions in the home; nonworking appliances and fixtures; Mother's poor judgment relating to her associates, some of whom used drugs; and the children's exposure to domestic violence. Mother stipulated to the allegations in the complaints

relating to her older children who were adjudicated neglected and dependent. Because of the circumstances surrounding the neglect and dependency of their older siblings, as well as other conditions in Mother's current household, B.W. and H.W. were in danger of future abuse or neglect.

{¶33} In this case, there was evidence that the conditions in B.W.'s and H.W.'s home were akin to those earlier endured by their siblings. Mother was repeating a pattern of raising her children in a home that required extensive repairs and cleaning to ensure a consistently safe and healthy environment. Holes in the walls potentially exposed the children to sharp edges and electrical wiring. The collapsing ceiling in the children's bedroom presented a hazard should they be hit by debris. The adults were leaving hundreds of cigarette butts strewn over the floors, including in the children's bedroom. The children were of ages during which they would be expected to routinely put accessible objects in their mouths. Although the children did not appear to be underfed, there was inadequate food in the home to sustain the five people living there.

{¶34} In this case too, Mother exhibited the same poor judgment regarding the persons with whom she associated and to whom her children were exposed. Mother allowed Mike, whose only connection to her was that he was a friend of a man who had served time for physically abusing Mother, to live in the home with her children. Mike had an active warrant relating to drug charges. Although he had not been convicted, Mother admitted to the police officer that she believed that Mike was using drugs. Despite her belief, Mother did not ask Mike to leave the home until the caseworker advised her to do so. Although Mike told the officer that he planned to leave the home, there was no evidence that he had actually done so.

{¶35} Mother's current live-in boyfriend also presented concerns similar to those presented by Mother's prior paramours. He was controlling and had pending criminal charges involving felony drug possession. Although the boyfriend had no criminal history of domestic violence, and Mother denied that he was abusive to her, Mother's black eyes and the broken cell phone and television screen in the home raised concerns that Mother had not broken her pattern of engaging in romantic relationships with men prone to anger and violence. Certainly, Mother's hesitance to speak candidly with the caseworker while her boyfriend was present indicated her desire not to upset him.

{¶36} The above conditions present a risk to B.W. and H.W. of abuse or neglect. An abused child includes one who is endangered. *See* R.C. 2151.031(B) and 2919.22(A). The children's exposure to the clutter and physical deficiencies in the home, as well as adults who are seemingly not well known by Mother and who reasonably may be involved with drugs, raise a substantial risk to the health and safety of the children. Because of the similarities between the circumstances underlying the older siblings' adjudications and the current conditions in B.W.'s and H.W.'s home, the children are at risk for abuse or neglect by Mother in this case. That there was no evidence that B.W. and H.W. had suffered any actual harm while in Mother's care does not preclude a finding of dependency where Mother's previous acts and the current conditions in her home present a danger of abuse or neglect. *See In re T.P.-M.*, 2008-Ohio-6437, at ¶ 11.

{¶37} For the above reasons, this Court concludes that the juvenile court's finding that B.W. and H.W. are dependent children pursuant to Section 2151.04(D) is not against the manifest weight of the evidence. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN OVERRULING MOTHER'S OBJECTIONS AND GRANTING [CSB'S] MOTION FOR REASONABLE EFFORTS BYPASS PURSUANT TO [SECTIONS] 2151.419(A)(2)(e) AND 2151.414(E)(11).

{¶38} Mother argues that the juvenile court erred by relieving CSB of its duty to use reasonable reunification efforts because the statutory scheme invoked in this case underlying the reasonable efforts bypass determination is unconstitutional. Because this Court lacks jurisdiction to address Mother's challenge at this time, we are prohibited from substantively considering Mother's second assignment of error.

{¶39} Article IV, Section 3(B)(2) of the Ohio Constitution limits this Court's jurisdiction and allows us to review only final judgments of lower courts. Pursuant to Section 2505.02(B)(2), an order is final and appealable if it "affects a substantial right made in a special proceeding." It is well settled that dependency/neglect/abuse cases constitute special proceedings, as they are governed by a statutory scheme and were not recognized by common law. *In re T.P.*, 9th Dist. Summit No. 27539, 2015-Ohio-3448, ¶ 10, citing *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, ¶ 43, and R.C. Chapter 2151.

{¶40} However, this Court has previously determined that, prior to the issuance of a final dispositional order, an order granting the agency's motion for a reasonable efforts bypass determination does not affect a substantial right. *In re T.P.* at ¶ 28. We reasoned that deferring appellate review of an order relieving the agency of its obligation to facilitate a parent's reunification with a child until after the juvenile court has issued a final dispositional order would not foreclose the opportunity for future appropriate relief. *Id.* at ¶ 11 and 28, citing *Southside Community Dev. Corp. v. Levin*, 116 Ohio St.3d 1209, 2007-Ohio-6665, ¶ 7 (explaining that an order affects a substantial right if the party would be foreclosed from

appropriate relief in the future if denied the ability to immediately appeal), and *In re J.E.*, 9th Dist. Summit No. 23865, 2008-Ohio-412, ¶ 19-24 (addressing the merits of an appeal from an order granting the agency's reasonable efforts bypass after a judgment terminating parental rights and granting permanent custody).

{¶41} In this case, Mother has appealed the order allowing CSB to bypass its statutory obligation to use reasonable reunification efforts as to Mother. The final custodial disposition of the children has not yet been determined, however. Should Mother ultimately lose legal custody of the children, she would have an adequate opportunity to appeal and seek appropriate relief at that time. Accordingly, as the deprivation of reasonable efforts by the agency does not affect a substantial right, in the absence of a final dispositional order, the juvenile court's bypass determination is not a final and appealable order. This Court has no authority to reach the merits of Mother's second assignment of error.

III.

{¶42} Mother's first assignment of error is overruled. This Court lacks the jurisdiction to consider the second assignment of error. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.