[Cite as *In re I.H.*, 2020-Ohio-778.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: I.H.
     H.C.

C.A. No.     29495

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN18-11-001190
                 DN18-11-001191

DECISION AND JOURNAL ENTRY

Dated: March 4, 2020

CALLAHAN, Presiding Judge.

{¶1} Appellant, A.M. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her two minor children dependent and placed one in the temporary custody of the maternal grandmother and the other in the temporary custody of his father (Father C.), under orders of protective supervision by CSB. This Court affirms.

I.

{¶2} Mother is the biological mother of I.H., born October 5, 2015; and H.C., born July 12, 2017. Father C. is the father of only H.C. The father of I.H. did not participate in these proceedings.

{¶3} On November 29, 2018, CSB filed complaints alleging that I.H. and H.C. were abused, neglected, and dependent children. The complaints alleged that the Akron Police Department had informed CSB that Mother had called them to the home numerous times to

report alleged criminal incidents. According to the police, their investigations had revealed no evidence of break-ins or other criminal activity that Mother had reported. Father C. was often at work or asleep when the police arrived and Mother usually exhibited delusional, paranoid, and/or erratic behavior. The police also observed the children and home to be very dirty. A CSB caseworker went to the home to investigate the police referrals, but Mother refused to allow her access to the home. Consequently, CSB's initial complaint sought an order of access to the home and a disposition of protective supervision of the children.

{¶4} The trial court granted CSB an order to access the home and an interim order of protective supervision. When the intake worker went to the home with a police officer, Mother was not cooperative and allowed only limited access to the home. After several days of Mother's refusal to cooperate with the caseworker, Father C. agreed to meet with the caseworker at the home. He also expressed concerns about Mother's mental health and her refusal to seek treatment or accept any outside help with the children or the home. Based on the caseworker's limited observation of the children, she also opined that they had significant developmental delays.

{¶5} On December 4, 2018, CSB filed an amended complaint, alleging additional concerns about Mother's mental health and her refusal to seek treatment, as well as her refusal to cooperate with CSB or Father C. Father C. had also informed the agency that he could no longer live with Mother because her behavior had become highly erratic and she had repeatedly called the police about "crazy" incidents that had not actually occurred in the home. At that time, CSB sought the removal of Mother from the home and placement of the children in the temporary custody of Father C. under an order of protective supervision. That same day, the trial court

issued an ex parte order to place the children in the emergency temporary custody of Father C. and for Mother to vacate the home.

{¶6} The matter proceeded to adjudicatory and dispositional hearings before a magistrate. The magistrate decided that I.H. and H.C. were neglected and dependent children, adjudicated them accordingly, and later placed I.H. in the temporary custody of the maternal grandmother and H.C. in the temporary custody of Father C. The trial court adopted the adjudicatory and dispositional decisions and entered independent judgment, pending the filing of timely, written objections.

{¶7} Mother filed a timely objection, which she supplemented after the transcript of proceedings was filed. Her objection was timely filed from both the adjudicatory and dispositional decisions, but she limited her argument to whether the adjudications of neglect and dependency were supported by the evidence presented at the adjudicatory hearing.

{¶8} The trial court sustained Mother's objection in part, concluding that CSB had failed to establish that the children were neglected. The trial court overruled Mother's objection pertaining to the finding of dependency under R.C. 2151.04(C), however, and independently entered judgment adjudicating both children as dependent. Mother appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND THE CHILDREN DEPENDENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} Mother's first assignment of error is that the trial court's adjudication of these children as dependent was against the manifest weight of the evidence. In considering whether

the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶10} The trial court found that the children were dependent under R.C. 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" As this Court has emphasized before, a finding of dependency under R.C. 2151.04(C) does not require a finding of parental fault; instead the focus is on the home environment and whether the child is without proper or adequate care or support. *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 19.

{¶11} Mother primarily disputes the trial court's finding that her home was unsanitary, arguing that the court placed blame on her for failing to keep the home clean when that was also Father C.'s obligation. The trial court's finding of dependency was not about blaming either parent but was based on the condition of the children's environment. The facts were not disputed that Father C. worked long hours and that Mother was primarily responsible for the children and the home because she did not work outside the home. Further, Father C. explained that he had tried to convince Mother to accept help with the children and the home but that she refused to allow others into the home. Father C. himself expressed concerns that the children were not properly cared for while they were alone with Mother.

{¶12} The evidence about the condition of the home did not merely concern its cleanliness. CSB presented evidence that police officers and the CSB intake worker had not only observed the children in a home that was not clean, but also that Mother was not caring for or interacting with the children. They had repeatedly observed H.C. left awake in a crib in the living room and I.H. restrained alone in a bedroom by a baby gate. The children did not speak or exhibit behavior that was developmentally on target for their respective ages. Moreover, the police and the CSB intake worker had repeatedly observed Mother exhibit erratic, irrational, and delusional behavior, but she refused to accept their suggestions that she seek mental health treatment.

{¶13} CSB's first witness was an Akron Police officer who testified about two different incidents when he responded to Mother's calls for police assistance. The officer, a 17-year police force veteran who had been trained to intervene during mental health crises, explained that he deals with people with mental illness "if not every day, at least every other day." He further testified that, after talking to someone for 10 to 15 minutes, he can often detect symptoms of mental illness through their statements and behavior. He opined that Mother exhibited symptoms of mental illness, which he verified by speaking to Father C.

{¶14} CSB's second witness was another Akron Police officer who had responded to the home on two separate occasions. Both times, Mother reported to the officer that there were listening devices in her home that were recording her and telling her to do things and were making her children bang their heads against the wall. The officer was unable to locate any listening devices in the home. He also observed the home to be filthy.

{¶15} During the second response by this officer, Father C. was asleep but awoke to speak to the officer. Father C. was surprised that Mother had called the police again. He assured

the officer that he would clean the home and persuade Mother to get mental health treatment. The officer contacted his sergeant to determine whether the children should be removed from the home pursuant to Juv.R. 6. They decided not to remove the children, based on Father C.'s assurances, but they made a referral to CSB at that time.

{¶16} Next, the CSB intake worker testified about her interactions with the family. Until the trial court ordered the parents to allow access to the home, Mother had refused to allow the caseworker in the home, but she spoke to her on the phone. Mother also told the caseworker that there were listening devices in her home that were telling her things while she was sleeping or trying to sleep. Mother did not want to discuss her mental health with the caseworker.

{¶17} When the caseworker was able to see Mother's home, she also observed that the children and the home were filthy. Mother refused to cooperate with her, so the caseworker arranged to meet with Father C. Father C. also expressed concern about Mother's mental health but told the caseworker that Mother refused to seek mental health treatment and would not accept help with the children or the home from outsiders. Father C. told the caseworker that he worked long hours, so it was difficult for him to help with the children or the home.

{¶18} A few days later, Father C. contacted CSB to report that Mother's erratic behavior had worsened, and he was concerned about the safety of the children while he was at work and they were in Mother's care. He reported that Mother had called him at work more than 70 times that day, texted him more than 100 times, and claimed that she had put a tracker on his phone. Mother told him that her phone and internet were bugged and that her doctor had implanted a tracking device inside her when H.C. was born.

{¶19} Although the trial court noted the poor condition of Mother's home as a basis for its adjudication, its primary focus was on Mother's untreated mental health problems and her

resulting inability to provide appropriate care for her children. Mother has failed to demonstrate that the trial court lost its way in concluding that I.H. and H.C. were dependent children under R.C. 2151.04(C). Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

> THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY UPHOLDING [THE TRIAL COURT'S] DECISION TO REMOVE MOTHER FROM THE HOME AND NOT FATHER THUS APPLYING THE LAW UNEQUALLY TO MOTHER AND FATHER IN VIOLATION OF MOTHER'S CONSTITUTIONAL RIGHTS UNDER THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶20} Mother's second assignment of error challenges the trial court's decision to remove her from the home of her children, claiming that it violated her constitutional right to equal protection. Because Mother did not raise this issue through a timely objection to the magistrate's decision, she has forfeited all but plain error. *See* Juv.R. 40(D)(3)(b)(iv).

{¶21} Mother's assigned error includes the words plain error, but she does not make a plain error argument. In fact, Mother fails to demonstrate any equal protection violation in the trial court's decision to remove Mother from the home. "Equal protection claims arise when a state treats similarly situated people differently on an arbitrary basis." *In re T.P.-M.*, 9th Dist. Summit No. 24199, 2008-Ohio-6437, ¶ 19, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 288–289 (1992). Although Mother asserts that the trial court treated her differently from Father C., with whom she was similarly situated, her argument is not supported by the record. Mother and Father C. were not similarly situated, as the evidence before the trial court demonstrated that Mother exhibited symptoms of serious mental health problems through her irrational behavior, but she refused to seek any treatment. There was nothing before the trial court to even suggest that Father C. also suffered from mental health problems.

**{¶22}** Mother has failed to demonstrate any merit to her equal protection challenge, much less plain error. Consequently, her second assignment of error is overruled.

## III.

**{¶23}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, J.
SCHAFER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

ANNETTE POWERS, Attorney at Law, for Appellee.

EMILY DURWAY, Attorney at Law, for Appellee.